SOUTHWESTERN PORTLAND CEMENT CO. v. BUSTILLOS.  (No. 305.)

(Court of Civil Appeals of Texas. El Paso. July 2, 1914. Rehearing Denied Oct. 5, 1914.)

1. NEGLIGENCE (§ 32*)—LICENSEES.

Plaintiff, being on defendant's premises to carry a lunch to an employé of defendant, a matter in which defendant had no interest, no invitation, but a mere license, is to be inferred as regards liability for his injury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 42–44; Dec. Dig. § 32.*]

2. NEGLIGENCE (§ 32*)—LICENSEES.

Plaintiff, though an infant, being on defendant's premises, where he was injured, not by invitation of it, but as a mere licensee, it owed no duty to him as to keeping them safe, but merely to refrain from acts willfully injurious.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 42–44; Dec. Dig. § 32.*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Action by Ynocenta Bustillos against the Southwestern Portland Cement Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Burges & Burges, of El Paso, for appellant. W. M. Peticolas and Stanton & Weeks, all of El Paso, for appellee.

McKENZIE, J. Ynocenta Bustillos sued the Southwestern Portland Cement Company, Atchison, Topeka & Santa Fé Railway Company, and the Rio Grande & El Paso Railway Company for damages for the death of her son, Ferdinando Bustillos, aged 15 years. Before trial, plaintiff dismissed the two railway companies from the suit. A trial before a jury resulted in a verdict and judgment for plaintiff for $2,500. The trial petition does not clearly and logically set out the facts, and, besides, it contains useless repetition. We will endeavor, however, to state the substance of the allegations, as follows: Appellant was engaged in the manufacture of ce-

ment; that near its plant and southerly therefrom was a public road along the banks of the Rio Grande river; that between the public road and appellant's premises are railroad tracks belonging to the El Paso & Rio Grande Railway Company; that 20 feet northerly from said railway tracks is a dummy line used and operated by appellant; that upon appellant's premises, northerly of and near the dummy line, is an excavation, formed either by excavating the earth or by filling in and leaving a depression the unfilled part forming the excavation; that the excavation in question at the time of the accident was used by appellant to dump therein refuse, consisting of ashes, cinders, burning coals, fire, slag, etc., from the cement plant, which formed a burning mass of great heat; that such burning mass, when undisturbed, apparently was harmless, but when disturbed, would give forth great heat, and flames would emit therefrom, and that the fire and heat in the excavation was sufficient to seriously injure or to cause death to one coming in contact therewith; that along the public road and near appellant's premises many people resided; that persons passing from the public road to the appellant's plant were required to cross over the railway tracks and near to the excavation; that alongside of the excavation were private roadways and trails formed by constant use of the premises by persons and vehicles; that appellant's premises were not inclosed by any fence; that the excavation was not fenced or inclosed, or in any manner protected to avoid persons falling therein; that the people of the settlement, appellant's employés, and persons having business at the cement plant, constantly and habitually passed over said premises and near said excavation; that though appellant knew of the constant and habitual use of its premises by said persons, which had been constantly going on since the erection of its cement plant, and had never taken any steps to prevent said use, impliedly and tacitly consented and agreed that the premises might be so used; that the appellant had failed to erect or maintain any signboards, watchman, or to provide any warning to apprise persons passing the excavation of its danger, and had negligently failed to erect or maintain any guard rail, fence, or other barrier to prevent persons from falling therein.

"That on, to wit, the 2d day of June, 1911, Ferdinando Bustillos, the minor son of plaintiff, was passing along the said thoroughfare, that is to say, was passing along a footpath along the border of said tramway, which was then, and had been for a long time, used by pedestrians, and which immediately adjoined and was within about a distance of 2½ feet from said depression, for the purpose of performing an errand to one of the employés of the said cement company, to wit, one —— Delfin, carrying his lunch to him at said cement plant, and at the time of so passing along and near to said depression, the said minor child was in the exercise of ordinary diligence; that the bank of

said excavation and pit was soft and composed of loose dirt, waste, and ashes that had been thrown near and into said excavation and pit in the manner aforesaid; that the said minor child, while so passing between the said tramway and the said pit, slipped and fell into the said excavation or pit, and his arms, hands, legs, and feet were so severely burned that, notwithstanding he was able to escape from said excavation or pit, he died from said injuries thus received upon, to wit, the 2d day of June, 1911.

"Plaintiff further avers that the Southwestern Portland Cement Company, by reason of the facts aforesaid and the maintenance of said excavation in the ground, and in the use of same in the manner aforesaid, and in permitting the same to remain in the condition aforesaid, and in permitting and causing to be thrown into said excavation coals of fire, ashes, waste, and slag, as aforesaid, and in failing to warn the public of the danger in said excavation, and in failing to fence, or otherwise guard the same, was guilty of negligence, and such negligence of the said defendant amounts to creating and maintaining a nuisance, and said pit or depression, so used, it might not lawfully maintain to the great danger of the public, and was the proximate cause of the injury to the minor son of plaintiff, and but for the negligence of the Southwestern Portland Cement Company, hereinabove alleged, plaintiff's minor son could not have fallen into said excavation, and would not have been injured and killed."

[1, 2] By the first assignment of error, appellant complains of the action of the trial court in overruling the general demurrer. In our opinion, the allegations of the petition fail to charge facts from which it could be inferred that the deceased was upon the appellant's premises by its invitation, either express or implied. On the contrary, by proper analysis of the allegations, it affirmatively appears that the deceased was upon the appellant's premises by mere permission or acquiescence, and would be therefore a licensee. It is expressly charged that he was passing along the footpath used by pedestrians for the purpose of performing an errand to one of appellant's employés. The errand mentioned consisted of carrying a lunch to said employé at the appellant's plant. It has been said that it is sometimes difficult to determine whether the injured party is a mere licensee, or whether he is upon the premises by an implied invitation, or by the allurement or enticement of the owner of the premises. The underlying distinctions appear to be that an invitation is to be inferred where there is a common interest or mutual advantage; while a license is to be inferred where the object is the mere benefit or pleasure of the persons using the premises. Galveston Oil Co. v. Morton, 70 Tex. 401, 7 S. W. 756, 8 Am. St. Rep. 611.

In Dobbins v. M., K. & T. Ry. Co., 91 Tex. 60, 41 S. W. 62, 38 L. R. A. 573, 66 Am. St. Rep. 856, it is said that:

"The common law imposes no duty upon the owner to use care to keep his property in such condition that persons going thereon without his invitation may not be injured. In considering the question as to whether the duty exists there is no distinction between a case where an infant is injured and one where the injury is to an adult; though where the duty is imposed the law may exact more vigilance in its discharge as to the former. If there be no duty, the question of negligence is not reached, for negligence can in law only be predicated upon a failure to use the degree of care required of one by law in the discharge of a duty imposed thereby. Since the common law imposes no duty on the railroad to use care to keep its right of way in such condition that persons going thereon without its invitation may not be injured, and since there is no evidence in the record from which the jury could have found such an invitation to the child, it was no more liable in law for its death than would have been a neighbor had it wandered into his uninclosed lands and been drowned in his tank or creek or been killed by falling down his precipice."

It may be then said as a general rule as to the liability of the owner of premises for injuries received by a person entering thereon, by reason of the unsafe condition of the premises, that the owner or occupier of the premises who, expressly or impliedly, entices or invites persons to go upon the premises for any purpose, is under a duty to exercise ordinary care to render the premises reasonably safe for such purposes, or at least abstain from any act that will make the entry upon or use of the premises dangerous, but that mere permission to pass over dangerous lands or acquiescence in such passage for the benefit and convenience of the licensee creates no duty on the part of the owner, except to refrain from acts willfully injurious. Fitzpatrick v. Cumberland Glass Mfg. Co., 61 N. J. Law, 378, 39 Atl. 675.

Applying the foregoing rules, then, we are of the opinion that the defendant company was under no obligation to keep its premises safe for the use of the decedent, and we are also of the opinion that the carrying of a lunch to an employé of the company was for no common interest or mutual advantage, whereby the company would be in any manner benefited. The decedent was not there by the invitation of the company—either express or implied—but was there about a matter in which the company had no concern, and was therefore a mere licensee.

The facts in Fitzpatrick v. Cumberland Glass Mfg. Co., supra, are quite similar to those in the instant case. In that case, plaintiff's father was an employé of the defendant company, and plaintiff, who was a boy 12 years of age, was accustomed to carry his father's dinner to him at the company's works. The carrying of lunches to his father was done, not only with the knowledge of, but by the permission of, the company. On the day upon which the plaintiff received his injuries, he carried his father's dinner to the works as usual, and as he passed through the main gateway, one of the gates, which had been allowed by the company to get out of repair, fell upon him, crushing his leg. The court said:

"Applying the rule established by these cases to the case in hand, it will at once be perceived that the defendant company was under no obligation to keep its premises safe for the use of the plaintiff. He was not there by the invitation of the company, express or implied. He

was there about a matter in which the company had no concern, i. e., the bringing of his father's dinner, and was saved from being a mere trespasser only by the fact that the company permitted him to come upon its premises for that purpose. He was a mere licensee. His presence on the company's land being merely permissive, and not by invitation, the only duty which the company owed him was to abstain from acts willfully injurious. That they failed in the performance of any such duty is not pretended in this case."

So in the instant case, the decedent being a mere licensee and not on the premises by an invitation of the appellant, we are of the opinion that the allegations are insufficient to ,show liability upon the part of the appellant, and the court erred in its failure to sustain the general demurrer.

For the reason indicated, the cause should be reversed and remanded. Reversed and remanded.