BUSTILLOS v. SOUTHWESTERN PORT-
LAND CEMENT CO.   (No. 54–2755.)

(Commission of Appeals of Texas, Section A.
May 28, 1919.)

1. PLEADING ⊗⟹433(2) — PETITION — SUFFI-
CIENCY—AIDER BY VERDICT.

Where no action was taken on general demurrer to petition, the verdict may aid petition, and it will be sustained if, by fair implication, it alleges facts necessary to sustain recovery.

2. NEGLIGENCE ⊗⟹32(1) — REAL PROPERTY —
CARE REQUIRED.

The duty of an owner or occupant of real property to keep it reasonably safe and give warning of concealed perils applies only to invitees, and not to trespassers or mere licensees.

3. NEGLIGENCE ⊗⟹32(2) — IMPLIED INVITA-
TION.

Owner or occupant of premises devoted to business purposes must exercise ordinary care to make them safe, since he impliedly invites persons having business with him to come upon premises for that purpose.

4. NEGLIGENCE ⊗⟹32(2) — PETITION — SUFFI-
CIENCY.

Petition, alleging that a boy carrying lunch to one of defendant's employés was killed by falling into an unguarded pit near footpath used by pedestrians with defendant's knowledge,

held to show an implied invitation to use the premises, and not a mere license.

5. APPEAL AND ERROR ⊗⟹1114—DISPOSITION
OF CASE—INTERMEDIATE COURT.

Where the Court of Civil Appeals erred in point upon which it reversed case, but did not pass upon other assignments of error, as to some of which its judgment is final, the Commission of Appeals will remand cause to Court of Civil Appeals for action upon such other assignments.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by Ynocenta Bustillos against the Southwestern Portland Cement Company. Judgment for plaintiff was reversed by the Court of Civil Appeals (169 S. W. 638), and plaintiff brings error. Reversed and remanded to Court of Civil Appeals.

W. M. Petticolas and Stanton & Weeks, all of El Paso, for appellant.
Burges & Burges, of El Paso, for appellee.

STRONG, J. This suit was brought by Ynocenta Bustillos to recover damages for the death of her 15 year old son, Fernando Bustillos. Omitting the formal allegations, the petition alleges:

"That the Southwestern Portland Cement Company owned and operated a cement plant adjacent to and northerly of said line of railway just northwesterly of the smelter in the said county of El Paso and state of Texas, and which said cement plant was and is near the point where the said minor child received the injuries from which he died, as will hereinafter more fully appear. That the said cement company was and is now engaged in operating tramways, roads, and in excavating stone in connection with their business in the manufacture of Portland cement. And plaintiff avers that her said minor son, at the time of his death, was 15 years old, resided with her in the county of El Paso and state of Texas, and was her only means of support at and prior to the time of his death, and that said minor son received injuries on the second day of June, 1911, from which he died, as hereinafter set forth.

"Second. Plaintiff further avers: That upon the date aforesaid, and prior thereto, and since, there existed near the cement plant and southerly thereof a public thoroughfare along the bank of the Rio Grande river. That, near the said public thoroughfare and between the same and the said cement plant and works of said cement company, there existed the aforesaid railroad hereinabove described, owned by the Rio Grande & El Paso Railway Company, and operated by the Atchison, Topeka & Santa Fé Railway Company. That northerly of said railway company's tracks about 20 feet there existed a dummy line, or tramway, used and operated by the said Southwestern Portland Cement Company. That still northerly of said tramway is situated the buildings and cement plant owned and operated by the Southwestern Portland Cement Company. That in the immediate vicin-

ity and not far away from said cement plant there is a hamlet, or settlement, where many people reside, and along said public thoroughfare and northerly of said tracks and in the vicinity of the plant of the Southwestern Portland Cement Company, are numerous residences and small houses occupied by divers persons who live in them. That of necessity any person passing from said public thoroughfare to said cement plant must cross over said railway tracks and near to and in the vicinity of the depression or pit hereinafter mentioned. That at or near said depression, or pit, are private roadways and trails which have been formed by the constant use of the premises immediately adjoining said pit, or depression, by persons and vehicles passing to and fro. That said depression or pit is near the plant of the Southwestern Portland Cement Company and the immediate vicinity is entirely open, in that it is not fenced or inclosed in any way, and that the people of said settlement, the employés at said cement plant, persons having business at said cement plant, and persons living along said public thoroughfare and in the vicinity of said cement plant and said depression, or pit, constantly and habitually pass over, across, and along said premises, and around, near, and in the immediate vicinity of said depression or pit, and the said defendant, the Southwestern Portland Cement Company, although said practice of so using its said premises and the vicinity of its said plant has been going on constantly and habitually since said cement plant was erected, has never taken any steps to prevent such use of said premises, but has impliedly and tacitly consented and agreed that said premises might be used by the general public and the employés of said cement plant and by persons having business at said plant. That the Southwestern Portland Cement Company for a long time has had notice and knowledge that its premises were so being used, not only by its employés, but by others of the general public, and that roadways, trails, and passageways have grown up and have been habitually and constantly used at and near said pit, or depression, hereinafter mentioned, by those residing in the vicinity and by the public in general. That not far from said cement plant and northerly of and very near to the dummy, or tramline, above described, and upon the premises of the Southwestern Portland Cement Company, and upon the right of way upon which said dummy or tramline is situated is an excavation or depression, in the earth, formed either by having been dug out or the adjacent ground having been built up around same, and which said excavation, or depression, was, as plaintiff alleges, formed and made by the defendant the Southwestern Portland Cement Company; and upon the date aforesaid and prior thereto, and since, the Southerwestern Portland Cement Company has used and is using said excavation, or depression, as a place in which to dump ashes, cinders, burning coals of fire, waste of different kinds, and the refuse in the nature of slag from its plant. That the aforesaid excavation ordinarily appears harmless, and there was nothing in or near the same to indicate heat or danger, or that there was fire in said trash, cinders, ashes, waste, or slag, and no warning of any sort at any time had been given by the Southwestern Portland Cement Company. That

in truth and in fact the heat and fire in said depression was very great and sufficient to seriously injure any one coming in contact therewith and to cause death. That the nature of the substances so dumped by the Southwestern Portland Cement Company into said excavation was such that when quiescent it was apparently not dangerous, but that when stirred up by any hard or heavy substance being thrown into same a flame would immediately break out, and, in fact, the heat and fire therein was at all times very great, and by reason of the aforesaid facts inherently, intrinsically, and affirmatively dangerous.

"That the Southwestern Portland Cement Company had known of the existence and use of said excavation since its inception and had known that the same, though apparently innocuous, in truth and in fact was of its very nature highly dangerous.

"That notwithstanding that fact, the Southwestern Portland Cement Company negligently failed to erect or maintain any signboards, watchman, or warnings of any sort to apprise the passerby, or the public, of the said hidden dangers, and negligently failed to erect or maintain any guard rail, fence, or other obstruction to prevent injury to any person by falling therein. That the existence and maintenance of said depression at the place and in the manner aforesaid was negligence on the part of the Southwestern Portland Cement Company. That it knew of the use of said premises by the public, as hereinabove alleged. That it knew of said depression. That it knew of the practice of dumping said molten and burning materials therein. That it knew that pedestrians and others passed near to said depression with the permission and knowledge of the said Southwestern Portland Cement Company as hereinafter alleged. That it failed to guard said depression in any way, or fence the same, or to take any steps to warn the public of the danger there lying hidden, all of which was negligence on the part of the Southwestern Portland Cement Company.

"Third. That on, to wit, the 2d day of June, 1911, Ferdinando Bustillos, the minor son of plaintiff, was passing along the said thoroughfare, that is to say, was passing along a footpath along the border of said tramway, which was then, and had been for a long time, used by pedestrians, and which immediately adjoined and was within about a distance of 2½ feet from said depression, for the purpose of performing an errand to one of the employés of the said cement company, to wit, one —— Delfin, carrying his lunch to him at said cement plant, and at the time of so passing along and near to said depression, the said minor child was in the exercise of ordinary diligence. That the bank of said excavation and pit was soft and composed of loose dirt, waste, and ashes that had been thrown near and into said excavation and pit in the manner aforesaid. That the said minor child while so passing between the said tramway and the said pit slipped and fell into the said excavation, or pit, and his arms, hand, legs, and feet were so severely burned that notwithstanding he was able to escape from said excavation, or pit, he died from said injuries thus received upon, to wit, the 2d day of June, 1911.

"Fourth. Plaintiff further avers that the

Southwestern Portland Cement Company by reason of the facts aforesaid and the maintenance of said excavation in the ground, and in the use of same in the manner aforesaid, and in permitting the same to remain in the condition aforesaid and in permitting and causing to be thrown into said excavation coals of fire, ashes, waste, and slag, as aforesaid, and in failing to warn the public of the danger in said excavation, and in failing to fence, or otherwise guard the same, was guilty of negligence, and such negligence of the said defendant amounted to creating and maintaining a nuisance, and said pit or depression so used it might not lawfully maintain to the great danger of the public and was the proximate cause of the injury to the minor son of plaintiff, and but for the negligence of the Southwestern Portland Cement Company hereinabove alleged, plaintiff's minor son could not have fallen into said excavation and would not have been injured and killed."

The plaintiff recovered judgment in the trial court, which upon appeal was reversed; the Court of Civil Appeals holding, under the allegations in the petition, that deceased was a mere licensee upon the premises of the defendant at the time of his injury, and defendant was under no legal obligation to keep its premises safe for his use. 169 S. W. 638.

[1] The defendant filed a general demurrer to the petition, but the record shows no action thereon by the court. In this condition of the record, the verdict of the jury may be looked to in support of the petition, and, if by fair implication facts necessary to sustain the recovery are alleged, the petition should be held sufficient to support the judgment. Schuster v. Frendenthal, 74 Tex. 53, 11 S. W. 1051.

[2, 3] The general rule is that the owner or occupant of real property is under no obligation to make it safe for the benefit of trespassers, intruders, or mere licensees coming upon it without his invitation, expressed or implied. If, however, such owner or occupant invites the public or particular members of it to come upon his premises, he owes to such persons the duty to have same in a reasonably safe condition and to give warning of latent or concealed perils. 1 Thompson's Negligence, § 945.

The petition does not allege an express invitation to deceased to come upon the premises of defendant upon the occasion of his injury. The precise question for determination, therefore, is whether the facts alleged are sufficient to show an implied invitation.

"Invitation by the owner or occupant is implied by law where the person going on the premises does so in the interest or for the benefit, real or supposed, of such owner or occupant, or in the matter of mutual interest, or in the usual course of business, or where the person injured is present in the performance of duty, official or otherwise. Invitation will also be implied from such long acquiescence as reasonably to give rise to the inference that it is invited, but it is not ordinarily to be inferred from mere passive acquiescence in what would otherwise be a trespass." 3 Shearman and Redfield on Negligence (6th Ed.) § 706.

It may be stated in this connection that the question whether the owner or occupant of buildings or grounds, devoted to business purposes, is under obligation to keep them safe for the protection of persons coming thereon, rests upon a somewhat different principle from that which relates to private ways. Where buildings or grounds are devoted to business purposes, there is an implied invitation to members of the public having business with the owner or occupant to come upon his premises for that purpose; and he is under a legal obligation to exercise ordinary care to make the premises safe for their protection. 1 Thompson on Negligence, § 985. This rule is thus well stated in Plummer v. Dill, 156 Mass. 426, 31 N. E. 128, 32 Am. St. Rep. 463:

"To come under an implied invitation, as distinguished from a mere licensee, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there. There must be at least some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the object of the visit may not be for the benefit of the occupant."

[4] Under the allegations in plaintiff's petition, deceased entered the premises of the defendant upon the occasion of his injury for the purpose of carrying a lunch to one of its employés, and, while passing along a footpath, slipped and fell into a burning pit. The premises were not fenced, and the footpath was constantly used by pedestrians, both old and young, with the knowledge and consent of defendant. The evidence shows that children were permitted to come to the plant daily for the purpose of bringing lunch to the employés, many of whom, on account of their hours of work, did not have time to leave the plant at the noon hour. This testimony was admissible under the allegations in the petition and, considered in connection with the allegation that defendant, had, from the time the cement plant began operations, permitted the public to enter the premises at will and to use the footpath near which was located the pit into which deceased fell, is sufficient, in our opinion, to raise the issue of an implied invitation to deceased to come upon the premises upon the errand in which he was engaged at the time of his injury. The errand of deceased was not only for a purpose connected with the business in which defendant was engaged, but it was in the interest and for the benefit of defendant through a necessary service to one of its employés. The defendant permitted deceased and other children to come upon its premises and knew they traveled the narrow path bordering the pit. The slightest re-

gard for their safety would have suggested the danger in passing so near a pit beneath the surface of which was concealed a burning mass into which they might accidentally slip and fall. Under the facts alleged in the petition, defendant will not be permitted to say that deceased was a mere licensee to whom it owed no duty and for whose safety it was under no obligation to make provision. Cotton Oil Co. v. Jarrard, 91 Tex. 289, 42 S. W. 959; Bennett v. Ry. Co., 102 U. S. 577, 26 L. Ed. 235; Ry. Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434.

[5] We think the honorable Court of Civil Appeals erred in holding that the petition did not state a cause of action, and, if this was the only reason assigned in that court for reversal, the judgment of the trial court should be affirmed. But there are other assignments of error raising questions which the Court of Civil Appeals did not deem it necessary to decide after reversing the judgment upon the ground stated. Many of these assignments raise questions upon which the judgment of the Court of Civil Appeals is final, and the defendant has the right to have that court pass upon these assignments. We are therefore of opinion that the judgment of the Court of Civil Appeals should be reversed, and the cause remanded to that court for its action upon these assignments. Article 1552, R. S. 1911; Manning v. Ry. Co., 107 Tex. 563, 181 S. W. 687; Bird v. Ry. Co., 207 S. W. 518.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.