GALVESTON–HOUSTON ELECTRIC RY. CO. et al. v. REINLE et al.   (No. 8097.)

(Court of Civil Appeals of Texas. Galveston. April 4, 1924. Motions for Rehearing by Both Parties Denied June 26, 1924.)

**1. Electricity ⬡15(2)—Electric railway company held to owe duty to warn employees of independent contractor of danger.**

Electric railway company, employing an independent contractor to construct a causeway upon which it carried dangerous high-voltage uninsulated wire, owed a duty to warn employees of contractor of the danger of coming in contact with, or in close proximity to, such uninsulated wire.

**2. Master and servant ⬡389—Compensation insurer's refusal to sue third person held not to preclude recovery by employee's representatives.**

That employee's representatives accepted compensation for death under Workmen's Compensation Act did not preclude recovery by them against negligent third person, though insurance carrier refused to prosecute such suit, since under Vernon's Sayles' Ann. Civ. St. Supp. 1918, art. 5246—47, right of insurer to be subrogated to rights of injured employee is for insurer's benefit to extent of sums advanced to employee; any excess thereof being for injured employee's benefit.

**3. Trial ⬡260(8) — Refusal of instruction practically identical with one given by court held not erroneous.**

In an action for death of employee of independent contractor electrocuted by electric wire, refusal of instruction that, if warning of the danger was given to employee by other employees it would inure to benefit of defendant, was not erroneous where it was practically identical with instruction given.

**4. Electricity ⬡19(5) — Finding failure to warn of danger was proximate cause of death, sustained.**

In an action for death of contractor's employee electrocuted by defendant's high-voltage uninsulated wire, evidence *held* insufficient to show that he was warned of danger of coming in close proximity with such wire and sufficient to sustain finding that such failure was proximate cause of his death.

**5. Death ⬡41—Parents of deceased necessary parties to action.**

In action by widow and child of decedent to recover damages for his death under Vernon's Sayles' Civ. St. 1914, arts. 4694, 4698, parents of decedent were necessary parties to the suit, as they were entitled to a part of the damages awarded under article 4688.

Appeal from District Court, Galveston County; H. C. Hughes, Judge.

Action by Lillian Walton Reinle and others against the Galveston-Houston Electric Railway Company, in which defendant made Larkin & Sangster and the United States Fidelity & Guaranty Company parties defendant. Judgment for plaintiffs against the first-named defendant; judgment for first-named defendant against other defendants; judgment for third-named defendant against second-named defendant; and first and third named defendants appeal. Reversed and remanded.

See 258 S. W. 803.

Hunt & Teagle, of Houston, for United States Fidelity & Guaranty Co.

Terry, Cavin & Mills, of Galveston, for Galveston-Houston Electric Ry. Co.

Frank S. Anderson, of Galveston, for appellees.

LANE, J. This suit was brought by Mrs. Lillian Walton Reinle, the widow of Willie Stephen Reinle, deceased, in behalf of herself and as next friend of Doris Evelyn Reinle, the infant daughter of the deceased, W. S. Reinle, against the Galveston-Houston Electric Railway Company, to recover damages for the death of their husband and father, respectively, which was alleged to have been caused by the negligence of said Galveston-Houston Electric Railway Company, hereinafter, for convenience, called the Interurban.

As a basis for the opinion to follow, we deem it advisable to make the following statement:

In the year 1908 or 1909 the Interurban Company and several steam railway companies entered into a contract with the county of Galveston, Tex., by the terms of which they leased from said county a portion of the causeway connecting Galveston Island with the mainland for a term of 999 years. In 1915 a portion of said causeway was destroyed by the storm of that year. After the reconstruction work became necessary because of the damage done by the storm of 1915, the Gulf, Colorado & Santa Fé Railway Company, the Galveston, Houston & Henderson Railroad Company, and the Harrisburg & San Antonio Railway Company, acting for themselves and for the county of Galveston, and for the Interurban Company, entered into a contract with Larkin & Sangster, a corporation, to reconstruct that portion of the causeway so destroyed.

For the purpose of securing the faithful performance of said contract by Larkin & Sangster, and for the further purpose of indemnifying and holding harmless the other contracting parties against all claims, demands, rights, suits, or causes of action of every nature whatsoever which might be brought against it or them, or either of them, on account of personal injuries, death, loss, or damage to property, or any other acts whatsoever, growing out of or connected with or incident to the prosecution of said construction work, Larkin & Sangster, as principals, and the United States Fidelity &

---

⬡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Guaranty Company, hereinafter called Fidelity & Guaranty Company, as surety, executed and delivered to said other parties a certain bond in the sum of $550,000, conditioned that Larkin & Sangster, Inc., and those claiming by, through, or under it, "shall well and truly perform and fulfill each, all and every covenant, condition, stipulation and agreement contained in, and according to the terms, tenor and effect" of the contract, and shall "repay to the said railway companies the sums of money which they, the said railway companies, may pay to other parties on account of the work and labor done or materials furnished, or on any other account as in said contract provided, and shall pay to the said railway companies all damages, including liquidated or stipulated damages, as in said contract provided, which they, the said railway companies, or those claiming by, through or under them, may sustain or be entitled to by reason of the nonperformance or malperformance on the part of the above bounden principal, or those claiming by, through or under it, of any of the terms, covenants, stipulations or agreements of said contract."

The Fidelity & Guaranty Company also issued to Larkin & Sangster, independent contractors, who had contracted to construct said causeway, a policy commonly known as a compensation insurance policy under the Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.) of this state, whereby it obligated itself to pay compensation to the employees of Larkin & Sangster in case of their suffering injury while engaged in such employment.

While this work of construction was being done, the steam roads and the Interurban used a single-track wooden pile trestle for the transportation of their trains, connecting the original arched bridge portion of the causeway with Galveston Island. A line of poles, in order to carry the Interurban wires, was a part of this trestle. The trolley wire supplying current to the Interurban was attached to arms extending over the track from these poles, and near the top of the poles, attached to the opposite side to the track, were three high-tension electric wires, belonging to and used by the Interurban, uninsulated and carrying 33,000 volts of electricity. These wires were some 40 or 45 feet from the ground upon which one Willie S. Reinle was standing at the time he met his death.

On March 21, 1919, Reinle was and for several months had been in the employ of Larkin & Sangster in the capacity of foreman of a gang of men operating a derrick, with an engine as a part thereof, used in making excavations for the foundation of the new piers which Larkin & Sangster were engaged in constructing. A wire rope or cable ran from the drums attached to the engine of the derrick over a pulley attached to the end of a boom and thence down to or near the ground,

at the ground end of which wire rope was attached a chain with a hook used for lifting buckets of excavated material or other substances. On the day on which he met his death, Reinle, who was in charge of the derrick, and who gave signals to the engineer for the movement thereof, the engineer being unable to see from his position in the engine house where the end of the derrick boom was located, signaled to the engineer to move the boom of the derrick in a direction toward the pile trestle; Reinle at that time holding onto the hook attached to the chain at the ground end of the wire rope running over the boom. The engineer moved the boom in accordance with Reinle's signals, and as a consequence the boom swung so near to the high-tension 33,000-volt wires above referred to as to cause the wire rope to come in contract with or in such close proximity to one of said wires as to cause a current of electricity to flow down said wire rope and through Reinle's body, causing practically instantaneous death.

As hereinbefore stated, at the time of the death of said Willie Stephen Reinle, said Larkin & Sangster was a subscriber to workmen's compensation under the Employers' Liability Act of the State of Texas, and had carried a workmen's compensation insurance policy in the United States Fidelity & Guaranty Company, and said deceased was killed while engaged in the course of his employment for said Larkin & Sangster. Prior to the institution of this suit, the plaintiffs elected to and did proceed against said United States Fidelity & Guaranty Company for compensation under the terms and provisions of the Employers' Liability Act of the State of Texas for and on account of the death of said Willie Stephen Reinle, and duly made and filed with the Industrial Accident Board of the State of Texas a claim for such compensation, and have accepted and received from said insurer payment of compensation at the rate of $15 per week from the date of the death of said deceased up to the date of the trial of this cause, and the said Fidelity & Guaranty Company is liable to the plaintiffs in this suit for the payment of said compensation at the rate of $15 per week from the date of the death of said deceased for a period of 360 weeks.

In the original petition of the plaintiffs, after substantially alleging the facts stated in the next preceding paragraph, it was in effect alleged that by reason of the death of Reinle, and the other facts stated, a legal liability was created in the Interurban to pay damages because of the death of Reinle, and that the Fidelity & Guaranty Company was and is, under the provisions of the Employers' Liability Act, subrogated to the rights of the beneficiaries of the deceased Reinle, the plaintiffs in this suit, and that the suit was caused to be brought by the said Fidelity & Guaranty Company; that same was being prosecuted by the Fidelity & Guar-

anty Company; that same was being prosecuted by the plaintiffs in their name for the joint use and benefit of themselves and the Fidelity & Guaranty Company to enforce the liability of the Interurban for the death of Reinle, together with the reasonable costs of enforcing such liability; that out of any sum or sums that may be recovered the Fidelity & Guaranty Company claims the right, under the provisions of said Employers' Liability Act, to reimburse itself and pay said costs; but that the excess after making payment of the claims of said company is due and should be paid to plaintiffs.

The Interurban filed a plea in abatement, asking that the suit be abated and dismissed because appellees had elected to proceed against the United States Fidelity & Guaranty Company as the compensation insurer of Larkin & Sangster, had filed a claim against it for the compensation, had accepted compensation from it, and because the suit was not instituted, nor caused to be instituted, nor was it being prosecuted by the United States Fidelity & Guaranty Company. The Interurban, pleading to the merits, in addition to a general denial, pleaded contributory negligence and pleaded that on September 1, 1917, Larkin & Sangster entered into a contract with the Interurban and the other causeway owners for the reconstruction of the causeway, by which contract Larkin & Sangster obligated itself to protect, indemnify, and save harmless the Interurban and the other causeway owners against all claims, demands, etc., which might be brought against said causeway owners, or any of them, on account of personal injuries, death, etc., growing out of, connected with, or incident to the work; that in order to protect and indemnify the Interurban and the other causeway owners under said contract, and to guarantee the faithful performance thereof, and of all of its terms by Larkin & Sangster, as principal, Larkin & Sangster, and United States Fidelity & Guaranty Company, as surety, had executed a bond in the sum of $550,000 conditioned for the faithful performance of all of the terms of said contract by said Larkin & Sangster. The Interurban made Larkin & Sangster and the United States Fidelity & Guaranty Company parties defendant to the suit and prayed that in the event any judgment should be rendered against the Interurban in favor of the appellees, that it have like judgment against Larkin & Sangster and the United States Fidelity & Guaranty Company on said contract and bond.

The Interurban further alleged that if it was guilty of any negligence, which caused Reinle's death, which was denied, its negligence was merely passive, and that the negligence of Larkin & Sangster was active in causing or contributing to the death, and therefore prayed that if any judgment should be rendered in favor of appellees that it have

264 S.W.—50

judgment for the same amount over against Larkin & Sangster.

After the Interurban had filed its answer, the Fidelity & Guaranty Company refused to join Mrs. Reinle in the suit as coplaintiff, and as such coplaintiff it was dismissed from the suit.

The Fidelity & Guaranty Company as a defendant answered by general demurrer, general denial, and a special plea that it was carrying the workmen's compensation for Larkin & Sangster; that it had been paying the sum of $15 per week for 47 weeks, up to the time of filing said answer, and would continue to pay the same until released by a decree of court; and prayed for judgment over and against Larkin & Sangster in the event of a recovery against it on its indemnity bond.

The plaintiffs filed their second amended petition admitting that the Fidelity & Guaranty Company was the insurer for Larkin & Sangster, under the Texas Workmen's Compensation Act, at the time Reinle lost his life, and that the plaintiffs had elected to take compensation and had taken compensation for the death of Reinle under said act, as alleged by the Interurban, for the term of 47 weeks, and that the Fidelity & Guaranty Company was still paying such compensation. They further alleged that since the Fidelity & Guaranty Company had declined to further prosecute the suit as a coplaintiff, the plaintiffs are continuing the suit in their own name. They further alleged that the United States Fidelity & Guaranty Company became and was subrogated to the rights of these plaintiffs against the defendant Interurban to the extent of the amount received by the said Lillian Walton Reinle and Doris Evelyn Reinle, a minor; that this suit was filed by the plaintiffs with the consent and at the request of the said defendant Fidelity & Guaranty Company under the terms and provisions of the Employers' Liability Act of the State of Texas as amended by the Acts of the Thirty-Fifth Legislature and this suit was prosecuted in the name of the plaintiffs, the legal beneficiaries of said deceased, for the joint use and benefit of the plaintiffs and the Fidelity & Guaranty Company to enforce the liability of the defendant for said injury and death, together with the reasonable costs of enforcing such liability, to be determined by the court, and out of any sum or sums recovered in this suit the Fidelity & Guaranty Company claim the right under the provisions of said act to reimburse itself and pay said costs, the excess so recovered to be paid to these plaintiffs; that since the institution of this suit, defendant Fidelity & Guaranty Company filed a motion in this cause for a dismissal of this action on behalf of the United States Fidelity & Guaranty Company and declined to longer prosecute said suit as one of the plaintiffs, which said motion was heard upon the merits and grant-

ed by the court, and thereupon the defendant Fidelity & Guaranty Company refused, and still fails and refuses, to prosecute this suit against the Interurban Company, or authorize these plaintiffs to sue or to join them in this suit, as required by the terms of the Workmen's Compensation Act of the State of Texas to institute and prosecute this suit to judgment against the defendant Interurban for the damages sustained by these plaintiffs, and this suit is now continued in the name and on behalf of the plaintiff Lillian Walton Reinle and Doris Evelyn Reinle, a minor, to recover their damages for the death of the said Willie Stephen Reinle, and they tender to the defendant Fidelity & Guaranty Company all sums paid to and received by them under the Workmen's Compensation Act, and all such compensation· as may be paid by said defendant in the future to be deducted from any judgment they may recover against the defendant Interurban Company, and elect to continue and prosecute this suit in their own behalf.

The plaintiffs· also alleged that Reinle lost his life by reason of negligence of the Interurban in failing to insulate its high-tension wires, and in failing to give notice and warning to Reinle of .the dangers attendent upon coming in contact with or in close proximity to said wires, and in permitting the machinery, derrick, boom, etc., operated by him to travel or come close to said wires.

It is not necessary to state the pleadings of Larkin & Sangster corporation, as it has not appealed.

The cause was submitted to a jury, to whom the court gave, among others, the following instructions:

"In determining your answers to special issues Nos. 2 and 3, as to whether any warning was or was not given to Willie Stephen Reinle, prior to his death, you are charged that if you find from the evidence that any such warning as is referred to in said special issues was given him by any of the employees of Larkin & Sangster, Inc., such warning, if any such you find, would inure to the benefit of defendant Galveston-Houston Electric Railway Company."

In answer to certain questions submitted, the jury answered in effect as follows:

First, that the Galveston-Houston Electric Railway Company was not guilty of negligence in maintaining its high-voltage wires in an uninsulated condition at and along the causeway where Willie Stephen Reinle was killed.

Second, that the Galveston-Houston Electric Railway Company did not use ordinary care with reference to giving notice and warning to the deceased, Willie Stephen Reinle, of the danger attendant upon coming in close proximity to or in contact with the high-voltage uninsulated wires belonging to said company.

Third, that the failure of the Galveston-

Houston Electric Railway Company to give notice to Reinle of the danger attendant upon coming in contact with or in close proximity to said high-voltage wires was the proximate cause of the death of Reinle.

Fourth, that Reinle was using ordinary care for his own safety in doing the work in which he was engaged at the time of his death.

Fifth, that Reinle did know that the high-tension wires of the Galveston-Houston Electric Railway Company above the place where he was killed were uninsulated.

Sixth, that Larkin & Sangster did use ordinary care to furnish Reinle with· a safe place to work at the time of his death.

Seventh, they found the damages suffered by Mrs.·Reinle to· be $7,250, and the damages suffered by Doris Reinle to be $8,000.

The plaintiffs by their motion requested the court to render judgment in their favor upon the answers of the jury to the questions propounded, and the Interurban moved the court to set aside the answers of the jury and render judgment in its favor. The court refused the motion of the Interurban, and rendered judgment for the plaintiffs for the sum of $15,250, less $5,400, same being the award made to the plaintiffs upon the claim for compensation under the provisions of the Workmen's Compensation Law. The sum so adjudged was divided between Mrs. Lillian Reinle and·Doris Reinle as follows: To Mrs. Reinle $4,682.79, and to Doris Reinle $5,167.21. Judgment was also rendered in favor of the Interurban over against Larkin & Sangster and.the Fidelity & Guaranty Company, jointly and severally, for the sum of $9,850, being the net sum adjudged to the plaintiffs against said Interurban, and also rendered judgment for the Fidelity & Guaranty Company over against Larkin & Sangster for said sum of $9,850, and it was further adjudged that said judgment should in no way affect the liability of the Fidelity & Guaranty Company to pay the sum awarded to plaintiffs under the provisions of the Compensation Law. From the judgments so rendered the Interurban and the Fidelity & Guaranty Company have appealed.

It is insisted by the Interurban, by its first assignment, that the court erred in not instructing a verdict in its· favor, in that:

"Recovery of damages based on negligence is allowed only when there has been a breach of a legal duty by the defendant to the plaintiff; the undisputed evidence showing that Larkin & Sangster, Inc., the causeway contractor, was an independent contractor as to the Interurban and óthers for the purpose of reconstructing the causeway, and that such independent contractor was fully advised and absolutely knew of the danger to its employees if machinery under their contract was allowed to come into contact with or close proximity to the uninsulated wires of this appellant, this appellant owed no duty to deceased Reinle, who was one of the employees of Larkin & Sangster, to

give him warning or instruction as to such danger. The fact that the wires were uninsulated being also fully known by Larkin & Sangster, and it being an independent contractor, no duty was owed by this appellant to the employees of the independent contractor to insulate the wires. There being, therefore, no duty on this appellant in either of the respects above mentioned, and these being the sole grounds of negligence alleged against it by appellees, there was no basis in the evidence for the submission of any issue to the jury, nor for the rendition of any judgment in appellees' favor against the Interurban, the peremptory instruction in its favor should have been given."

The United States Fidelity & Guaranty Company insists that as the indemnity bond issued by it, upon which the Interurban Company seeks a recovery, is a joint obligation running in favor of the Gulf, Colorado & Santa Fé Railway Company, the Galveston Houston & Henderson Railway, the Harrisburg & San Antonio Railway, the County of Galveston, and the Interurban Company, joint owners of the causeway, and was issued and given to secure the construction of a joint enterprise, no one of such joint owners could exhaust such security by a suit in its own behalf only.

This cause being before this court on appeal, on the 5th day of April, 1922, we certified to the Supreme Court the following questions:

"First. The undisputed evidence showing that Larkin & Sangster, the causeway contractor, was an independent contractor as to the appellant Interurban Company for the construction of the causeway, was such appellant resting under any legal duty to Willie S. Reinle, deceased, to give him warning or notice as to the danger incident to permitting the boom, being operated under his direction as an employee of Larkin & Sangster, coming in contact with or in close proximity to the high-voltage wires of said appellant?

"Second. If judgment was properly rendered in favor of the plaintiffs against the Interurban Company, could the Interurban Company recover judgment over against the United States Fidelity & Guaranty Company upon its bond of indemnity, hereinbefore described, without showing that such recovery would not affect the rights of the other beneficiaries under said bond?"

On the 13th day of February, 1924, the Supreme Court (258 S. W. 803), in an opinion not yet [officially] published, said, with reference to the second question propounded by this court, that it had been agreed by the parties that it had become moot and required no answer. Therefore it becomes unnecessary for us to further discuss the contention of the United States Fidelity & Guaranty Company above mentioned.

Answering the first question, the Supreme Court said:

"The nature of the work which the Interurban Company contracted for Larkin & Sangster to have performed necessitated the employment by the contractor of men within a zone of extreme danger created by the high-tension wires. The contract involved an invitation by the Interurban Company to the contractor's employees to labor within the danger zone. How imminent the peril was cannot be questioned in the light of the testimony of the Interurban Company's superintendent as set out in the company's brief. The facts, therefore, bring the case within the rule that one cannot, for his own advantage, invite others to come on, or to remain about, premises in his possession and under his control, without using proper care to give warning of a grave danger to be probably there encountered, of which the invitees may have no knowledge."

In support of such answer the Supreme Court in its opinion cites: Samuelson v. Cleveland Iron Mining Co., 49 Mich. 170, 13 N. W. 501, 43 Am. Rep. 456; Bustillos v. Southwestern Portland Cement Co. (Tex. Com. App.) 211 S. W. 929; City of Greenville v. Pitts, 102 Tex. 3, 107 S. W. 50, 14 L. R. A. (N. S.) 979, 132 Am. St. Rep. 843; Bennett v. L. & N. Ry. Co., 102 U. S. 577, 26 L. Ed. 235.

In discussing the facts of the present case, the Supreme Court said that such facts warrant the conclusion that the Interurban Company was knowingly keeping in operation a force inherently dangerous to the person of Reinle in the regular performance, with necessary machinery, of his duty as an employee of Larkin & Sangster, without exercising due care to prevent his injury or death, and following such statement the court said:

"The opinion of the Texas Commission of Appeals in the case of George W. Armstrong Co. v. Adair, 112 Tex. 439, 247 S. W. 851, was recently adopted by the Supreme Court. It was there declared to be the duty of a company controlling premises on which one could not come without incurring a danger inhering in the premises to exercise ordinary care towards any person invited by the company to remain about the premises, with respect to the giving of such warning as might be reasonably necessary to enable the invitee to escape harm.

"The obligation resting on the user of wires highly charged with electricity to exercise reasonable care to avoid injury to all known to be rightfully coming into a place of danger from such wires, especially when coming to render a service beneficial to the user of the wires, is thus stated in 9 R. C. L. p. 1206, § 16, viz.: 'This duty of using the necessary skill and prudence to prevent injury to persons coming in contact with their wires is imposed upon electric companies, not only as regards the public generally, but also with respect to any individual engaged in a lawful occupation in a place where he is entitled to be. Such persons are not trespassers or licensees bound to take the premises in the condition in which they find them.' To the same effect, see Ennis v. Gray, 87 Hun, 360, 34 N. Y. Supp. 379; Clements v. Louisiana Electric Light Co., 44 La. Ann. 692, 11 South. 51, 16 L. R. A. 44, 32 Am. St. Rep. 348; Illingsworth v. Boston Electric Line, 161 Mass. 583, 37 N. E. 778, 25 L. R. A. 553."

Again:

"There is no doubht that the independent contractor was under the duty to exercise ordinary care to give warning to its employees of the dangers incident to their work from proximity of the appliances with which they were required to labor to the deadly electric current carried by the Interurban Company's wires. Breach of this duty is not the basis of the Interurban Company's liability. It is the breach of the Interurban Company's own independent duty for which it is answerable. Failure of the contractor to perform its duty would in no wise relieve the Interurban Company from responsibility for the consequences of failure to perform its own duty to the contractor's employees.

"The reason for the employer's liability for an injury occasioned like Reinle's is stated in Cooley on Torts to be: 'If I employ a contractor to do a job of work for me which, in the progress of its execution, obviously exposes others to unusual perils, I ought, I think, to be responsible, * * * for I cause acts to be done which naturally expose others to injury.' 2 Cooley on Torts (3d Ed.) p. 1091."

[1] The answer of the Supreme Court to certified question No. 1 hereinbefore stated demands at our hands a rejection of the contention of the Interurban Company that under the facts of this case it owed no duty to warn the deceased Reinle, or other employees, of the independent contractor, Larkin & Sangster, as to the danger of coming in contact with or in close proximity to its uninsulated wire. It follows, therefore, that since the jury has found upon sufficient evidence that the Interurban Company was guilty of negligence in not warning Reinle of the dangers incident to coming in contact with or in close proximity to its uninsulated wires, the judgment against it must be affirmed, unless reversed on other grounds presented by said Interurban Company.

We now come to a consideration of other assignments not disposed of by the answers of the Supreme Court to the certified questions.

[2] Another ground urged for the reversal of the judgment against the Interurban is that appellees accepted compensation under the Workmen's Compensation Act from the United States Fidelity & Guaranty Company, which carried compensation insurance for Larkin & Sangster, the employers of Reinle, and therefore appellees are precluded from recovering against the Interurban Company, as the right to recover under such circumstances is conferred by law upon the United States Fidelity & Guaranty Company, and since the insurance company has refused to prosecute this suit against the Interurban Company, appellees should not be permitted to recover against said Interurban Company.

This contention cannot be sustained. It was shown that Larkin & Sangster, the employers of Reinle, were under the terms of the Workmen's Compensation Act a "subscriber," as that term is used in said act, and that thereunder the plaintiffs were entitled to, and in fact did receive from the United States Fidelity & Guaranty Company, which had indemnified the employers of Reinle, deceased, $5,400 to be paid in weekly payments. The original compensation act, together with its supplemental amendments, is voluminous and not in every particular clear, but section 6a of part 2 of the latest law on the subject (article 5246—47, Vernon's Civil Statutes 1918) reads as follows:

"Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than the subscriber to pay damages in respect thereof, the employee may at his option proceed either at law against that person to recover damages or against the association for compensation under this act, but not against both, and if he elects to proceed at law against the person other than the subscriber, then he shall not be entitled to compensation under the provisions of this act; if compensation be claimed under this act by the injured employee or his legal beneficiaries, then the association shall be subrogated to the rights of the injured employee in so far as may be necessary and may enforce in the name of the injured employee or of his legal beneficiaries or in its own name and for the joint use and benefit of said employee or beneficiaries and the association the liability of said other person, and in case the association recovers a sum greater than that paid or assumed by the association to the employee or his legal beneficiaries, together with a reasonable cost of enforcing such liability, which shall be determined by the court trying the case, then out of the sum so recovered the association shall reimburse itself and pay said cost and the excess so recovered shall be paid to the injured employee or his beneficiaries. The association shall not have the right to adjust or compromise such liability against such third person without notice to the injured employee or his beneficiaries and the approval of the board, upon a hearing thereof."

It has been already shown that the sum of $5,400 awarded by the accident board was by the judgment deducted from the amount of damages found by the jury.

In Lancaster v. Hunter (Tex. Civ. App.) 217 S. W. 765, a case very much like the present one, Conner, C. J., speaking for the Ft. Worth court, said:

"Notwithstanding that it is thus declared that an injured employee of a subscriber, within the meaning of the terms of the Workmen's Compensation Act, may not proceed both against the association and a third party liable to him because of negligence, we do not feel prepared to hold that the plaintiff's suit now under consideration has been absolutely barred by the proceedings. The right of the association, or of a surety corporation in the same attitude under the provisions in the act, to be subrogated to the rights of the injured employee, is evidently given for the benefit of the indemnifying corporation. The section quoted

does not destroy or abrogate plaintiff's cause of action. The third party wrongfully causing the injury may yet be sued, and when sued by the indemnifying corporation it is for the benefit of the indemnifying corporation to the extent of the sums advanced to the employee by it and also for the benefit of the injured employee for any excess. The act evidently contemplates that the injured employee is the real beneficiary in cases where the damages exceed, as may often happen, the amount received by the employee from the indemnifying association. Numerous authorities might be cited to the effect that in equity the real beneficiary may always be permitted to sue where the party having the mere legal title or right fails or refuses. See Trust Co. v. Merritt (C. C.) 54 Fed. 55, and cases therein cited."

We concur in the holding made by the Dallas Court in the case from which we have just quoted. See Wm. Cameron & Co. v. Gamble, 216 S. W. 459.

[3] Another ground urged by the Interurban Company for reversal of the judgment is that it was not liable to appellees, even if a duty rested upon it to give warning to Reinle of the dangers incident to coming in contact with or in close proximity to its high-voltage wire, which it did not perform, if as a matter of fact he either knew of such danger, or if warning thereof had been given to him by Larkin & Sangster, or by any one else; and as there was evidence tending to show that Reinle was given warning of such danger, the court committed reversible error in refusing to give the following requested charge:

"Gentlemen of the jury, in determining your answer to special issues Nos. 2 and 3, as to whether any warning was or was not given to Willy Stephen Reinle, prior to his death, you are charged that if you find from the evidence that any such warning as is referred to in said special charge was given him by any of the employees of Larkin & Sangster, Inc., such warning, if any such you find, would inure to the benefit of defendant Galveston-Houston Electric Railway Company, and in such event answer such question in the affirmative."

We do not think the court erred in refusing the requested charge. In submitting special issues Nos. 2 and 3, the court in its main charge instructed the jury as follows:

"In determining your answers to special issues Nos. 2 and 3, as to whether any warning was or was not given to Willy Stephen Reinle, prior to his death, you are charged that if you find from the evidence that any such warning as is referred to in said special issues was given him by any of the employees of Larkin & Sangster, Inc., such warning, if any such you find, would inure to the benefit of defendant Galveston-Houston Electric Railway Company."

The requested charge and that given are practically identical in words, and we think it apparent that the jury could not but have understood that the court had instructed them that a warning by any employee of Larkin & Sangster would be equivalent to a warning by the Interurban Company.

The appellant Interurban Company also insists that the court erred in submitting to the jury the question as to whether the deceased Reinle was warned by an employee of Larkin & Sangster of the dangers incident to coming in contact with or in close proximity to the Interurban's wires, in that the undisputed evidence shows that Reinle was given such warning by an employee of Larkin & Sangster.

[4] We are not prepared to hold that the undisputed evidence shows that Reinle had knowledge that it was dangerous to let his derrick boom come in close proximity to the uninsulated wires of the Interurban Company. While there is undisputed evidence showing that Reinle was told to be sure not to get into those wires, that if he did he would get killed or injured, there is no probative evidence that he was told that it was dangerous to let his derrick boom or lift come close to said wires. The testimony of the witnesses James Blair and S. A. Churchhill was practically all the evidence relative to whether Reinle was warned of the dangers mentioned. As to the warning given Reinle, Blair testified as follows:

"I do not have any very definite recollection of whether I spoke to Mr. Reinle about the danger attendant upon touching those wires on the day the accident happened; I don't know that I did speak to him on the day of the accident. If I swore on the last trial that I spoke to him about five hours before, probably I did; I would not swear it; I don't remember if I was correct then or if I am correct now about that. I know I talked to him about it dozens of times, but not that day. The occasion of my talking about it to him a dozen times was that one time wasn't enough on that work. I told him about the danger of coming in contact with those wires right on that piece of work he was at right there, and I told him about the time he moved the derrick up or some time close to that time. That is as near as I can come to it. I said to him: 'You want to be very careful of those wires; you are closer than you were all along the work.' I told him probably words like that; I would not swear to what I said, pretty hard to remember what words I used. I think I mentioned one time to keep away four feet; I mentioned four feet because I knew what was safe in my own mind. I am not an electrician."

"Q. How did you get four feet in your mind? A. We have been closer with the booms and no damage.

"Q. Then why did you think it would be dangerous to come four feet? A. I didn't say dangerous; I said safe.

"Q. Did you think it would be dangerous to get closer than that? A. No, sir."

Again:

"I didn't know anything about the danger of getting close to them and didn't know that the voltage would jump from the wire to the boom;

I had no knowledge of that whatever and had no knowledge of it at that time; I had no knowledge of any danger of getting in close proximity to the wires—knowed nothing about it at all.

"I never had any conversation with Mr. Reinle in the presence of Mr. Churchhill about those wires; I never told Reinle in the presence of Mr. Churchhill not to get into the wires or he would kill his hoghead, and I never told Churchhill that in the presence of Reinle."

S. A. Churchhill testified that he heard Blair tell Reinle to be sure not to get into those wires; that if he did he would be killed. Testifying further, he said:

"I could not say that prior to the time he was killed Reinle knew that the Interurban wires were on said causeway and that it was dangerous for said boom or lift to get near said wires or in contact with them, but I will say, as I have testified above, that I heard Jim Blair, general foreman for Larkin & Sangster, tell Reinle, 'Don't get into those wires, if you do you will kill your hoghead sure, 'meaning me; but whether Reinle heard what Jim Blair said I could not say. As I have just stated, I heard Jim Blair tell Reinle not to get into said wires. Blair said: 'Don't get into those wires, if you do you will kill your hoghead sure,' meaning me. It could not have been over two or three weeks before Reinle was killed that this statement was made to him."

While it was shown, as found by the jury, that Reinle knew that the wires of the Interurban were uninsulated and that it was dangerous to come in contact therewith, it is not shown that he knew or was warned by any one that it was dangerous to come in close proximity thereto.

There is evidence tending to show that the accident complained of resulted from permitting the boom or lift, which was, together with others, being manipulated by Reinle at the time of said accident, to come in close proximity to said wires. Under these circumstances, we are not prepared to hold that the finding of the jury, that the failure of the Interurban to warn Reinle of the danger of coming in close proximity to said wires was the proximate cause of his death, was unsupported by evidence. We therefore overrule appellants contention last mentioned.

Appellant's nineteenth and last assignment is as follows:

"The court erred in overruling the objection of this defendant to its being compelled to proceed with the trial of this cause and in overruling and refusing its request and motion for leave to withdraw its announcement of ready for trial and to either postpone or continue this cause, whichever the court shall deem proper, in order that Edward Reinle and his wife, Mrs. Edward Reinle, the surviving father and mother of Willy Stephen Reinle, deceased, may be made parties to this cause, said objections, request, and motion having been made orally by this defendant while the plaintiff, Lillian Walton Reinle, widow of said Willy Stephen Reinle, deceased, for damages on account of whose death this suit is brought and prose-

cuted by her for herself and as guardian of her minor child only, was on the witness stand testifying as a witness in this cause and as soon as and immediately after she testified, on cross-examination by this defendant, that said Edward Reinle and his wife, Mrs. Edward Reinle, are the mother and father of said Willy Stephen Reinle, deceased, and that they are both now living and residents of Austin, Tex., neither of them being parties to the suit, said objections, request, and motion being made, as stated to the court at the time, on the ground that said Edward Reinle and his wife are necessary parties to this case, and there is therefore a defect of necessary parties and nonjoinder of necessary parties herein, and no legal judgment can be rendered in this cause until said Edward Reinle and his said wife, the mother and father of said Willy Stephen Reinle, deceased, are made parties thereto, and the defendants Larkin & Sangster, Inc., and United States Fidelity & Guaranty Company joined in said objections, request, and motion, each on its own behalf."

[5] We think this assignment should be sustained. This suit was, as has been already shown, brought by Mrs. Lilliam Reinle, the widow of Reinle, and their only child, to recover damages for the death of Reinle. It cannot be reasonably inferred from the allegations of the plaintiffs' petition that the suit was brought in behalf of any other persons than the parties specifically named in the petition. Indeed, it was so understood by the court and all parties to the suit, and under such understanding judgment was rendered for the plaintiffs for the entire amount of damages found by the jury.

It was shown at the trial that the father and mother of Reinle were living and were not parties to the suit. Under these circumstances, the court erred in proceeding to judgment without making the parents parties to the suit, over the protest of the defendants, as the parents were necessary parties and entitled to a part of the damages awarded. Article 4698, Vernon's Civil Statutes of 1914; Railway v. Culbertson, 68 Tex. 664, 5 S. W. 820; Ft. W. & D. C. Ry. v. Wilson, 85 Tex. 516, 22 S. W. 578; S. A. & A. P. Ry. v. Mertink, 101 Tex. 165, 105 S. W. 485; G., H. & S. A. Ry. v. Pennington (Tex. Civ. App.) 166 S. W. 464; San Antonio Cement Co. v. Gschwender (Tex. Civ. App.) 191 S. W. 599; S. L. & S. W. Ry. v. Anderson (Tex. Civ. App.) 206 S. W. 696.

This suit was brought under the provisions of articles 4694 and 4698, Vernon's Sayles' Civil Statutes of 1914, under the title of "Injuries Resulting in Death."

By article 4694 suits of this kind are authorized, and by article 4698 it is provided that—

"The action shall be for the sole and exclusive benefit of the surviving husband, wife, children and parents of the person whose death shall have been caused. * * *"

None of the provisions of the Workmen's Compensation Act, articles 5246—1 et seq.,

have any application to this suit, except in so far as section 6a of part 2 thereof authorizes suit to be brought against third persons, neither the subscriber nor the insurer, notwithstanding compensation might have been theretofore awarded by the compensation board created by said act.

In all the cases cited it is in varying forms held that in suits brought under the statute which gives a right of action to the surviving wife, husband, children, and parents of one whose death is caused by the negligence of another, it is necessary to make all of such kindred parties to the suit, and if one so related is not made a party and the existence of such necessary party is made known to the court during trial, as was done in the present case, it would be the duty of the court to suspend the trial and require such relative to be made a party.

In Ft. Worth & Denver City Railway v. Wilson, supra, Judge Henry, speaking for our Supreme Court, said:

"It is suggested, that notwithstanding the fact that the father and mother of the deceased were not joined in the suit, still the issue joined was such that the plaintiffs recovered only the amount of damage by themselves sustained. It is by no means clear that such is the case. It is a mere conjecture to conclude that when only a portion sue they will recover no more than they would have done if the claims of others had at the same time been considered. We think that the probabilities are decidedly the other way."

In view of the fact that the judgment must be reversed and the cause retried, we deem it unnecessary for us to discuss the form of the judgment entered or the necessity for a reform thereof, as suggested by the several parties.

We have considered all the assignments of the Interurban, which were adopted by the United States Fidelity & Guaranty Company, the other appellant, and have disposed of them as above indicated.

Because of the error of the court in failing to make the parents of W. S. Reinle parties to the suit, as requested by appellant, the judgment is reversed and the cause remanded.

Reversed and remanded.