[Civ. No. 19074.   Second Dist., Div. Two.   Oct. 16, 1952.]

EARL W. NAGLE, Appellant, v. CITY OF LONG BEACH, Respondent.

Riedman & Silverberg and Fred M. Riedman for Appellant.

Gibson, Dunn & Crutcher, Sherman Welpton, Jr., William F. Spalding and C. Robert Simpson, Jr., for Respondent.

MOORE, P. J.—Appeal from a judgment entered after granting a motion for nonsuit in an action by an employee of the contractor for alleged negligence of the city in the maintenance of the facilities used for entering and leaving a gas holder. In ascending from the bottom of the tank's interior, a crossbar near the top of the ladder he was climbing gave way and he fell to the bottom, causing serious injuries.

Respondent contracted with a construction company to repair its gas holder, a reservoir for storing gas for domestic consumption. Appellant was an employee of the contractor engaged to make such repairs. The reservoir's lower portion is a large immobile stationary steel tank 45 feet in height. Its upper portion contracts and expands after the fashion of a small telescope to accommodate its capacity to the amount and pressure of the gas stored. Within the lower part is a wooden structure made of uprights, extending vertically the entire 45 feet with their necessary braces. Upon such wooden structure, the upper, expansive part of the tank rests when not lifted by the gas. The tank was built about 1927. Minor repairs were done in 1933 and in 1947. The construction company which employed appellant performed its contract in 1948. Throughout the years of its service the tank contained water 35 feet in depth which covered the wooden structure. When the construction company commenced its operations, it opened the top of the reservoir to permit entrance into and exit from the interior. This was accomplished by removing a steel plate at the top. Then a ladder 4 feet in width was constructed by the contractor inside the tank extending from the floor to the opening. It was made of wooden crossbars fastened to three vertical uprights of 2 x 4 timbers set in a stationary position.

But there was another ladder already in the tank at the time of the commencement of repairs for the use of the workmen. It is referred to as a "chicken ladder." It consisted of crossbars 1" x 4" x 20" nailed to a single timber. It extended directly to an aperture at the top. The crossbars had been nailed to the ascending timber at the time the tank was first constructed and through the years had remained there partially submerged in water. The chicken ladder was more

than 75 feet from the 4-foot ladder. Because the latter was covered with grease and muck from the boots of the men who climbed it, the chicken ladder was used by many of the men for ascending to the top of the reservoir.

When appellant entered the tank on August 3, 1948, he used the 4-foot ladder, and again on leaving. He entered by the same on the following day but when appellant with his 210 pounds tried to make his exit he resorted to the chicken ladder. He faced the ascending timber as he progressed upwards and could see the union of the crossbars and the column all the way but found no defect. Also, three other craftsmen who had used that ladder observed no defect and they had seen other employees use it. Appellant chose to use it because (1) it was near the spot where he ended the day's work, (2) the grease on his employer's 4-foot ladder was excessive, (3) a fellow-workman suggested their using the chicken ladder, and (4) no signs told him not to use it. His immediate duties in the tank were to assist in strengthening the interior wooden framework with new bracing and nailing.

In support of his demand for a reversal, appellant invokes the familiar rules applicable to the review by an appellate tribunal of judgment following a nonsuit as well as of the duty of an owner of property to exercise ordinary care to keep his premises reasonably safe and to warn an invitee of any hidden dangers or defective conditions thereon.

His doctrines are sound but their application to the instant factual situation is not justified. He adopts the argument of the plaintiff in *Ambrose* v. *Allen*, 113 Cal.App. 107 [289 P. 169]. Ambrose was a visitor to defendant's structure which was undergoing repairs. He stepped on a joist that gave way as a result of percolating water, dust and age. The court opined (page 113) that "negligence is not absolute, but is a relative matter, depending upon time, place, persons, and circumstances . . . The fact that the building and the stairway were evidently in process of construction charges those concerned in its construction with a very different degree of care from that which attaches to the owner of a completed building . . ." The authorities cited in the opinion are pertinent and illuminating. ■ It is an established rule that an invitee to an incompleted building in process of construction is invited to use such building in its condition then existing. (*Kolburn* v. *P. J. Walker Co.*, 38 Cal.App.2d 545, 549 [101 P.2d 747].) The same rule should apply to a building undergoing repairs. ■ In *King* v. *Griffith Co.*, 65 Cal.

App.2d 114, 116 [150 P.2d 8], the plaintiff learned the same to his chagrin that if the dangerous condition of the premises is obvious, the "owner is entitled to assume that such invitee will perceive that which would be obvious to him upon the ordinary use of his own senses." See, also, *Clyde* v. *Mitchell*, 14 Cal.App.2d 365 [58 P.2d 205].

■ The doctrine announced in those decisions is especially applicable here. Appellant was upon respondent's property as part of a labor group specifically brought there for the purpose of strengthening and refurbishing a wooden structure within the gas reservoir. He was a skilled craftsman employed to assist in remedying the grossly defective conditions which contributed to his injuries. The very nature of his employment was itself warning of the dangers to be encountered. Moreover, his own weight was a suggestion that he be cautious in climbing on any old structure especially one that had been under water for 25 years. The record contains no specific evidence as to the nature of the alleged defective condition of the ladder and why it gave way under appellant's weight. Although appellant testified that a rung gave way, it was not shown that this occurred because of rotting wood or rusted nails; nor does the proof show whether the rung broke or the nails pulled loose. In the absence of such evidence it might well have been that a thorough scrutiny by respondent would have failed to reveal any defective conditions. Where such proof is lacking, there can be no finding that a reasonable inspection by respondent would have discovered the alleged danger. It follows that the motion for nonsuit was properly granted. (*Trembley* v. *Capitol Co.*, 89 Cal.App.2d 606, 609 [201 P.2d 398].)

Judgment affirmed.

McComb, J., and Fox, J., concurred.