[Civ. No. 20937.   Second Dist., Div. Three.   Jan. 11, 1956.]

MAURICE WILSON ALLEN, Respondent, v. JIM RUBY CONSTRUCTION COMPANY (Individual's Fictitious Name), Appellant.

Schell, Delamer & Loring and Louis M. Welsh for Appellant.

Levy, Russell & De Roy, George De Roy and Jack Levine for Respondent.

SHINN, P. J.—In this action for personal injuries the complaint alleged that Jim Ruby Construction Company (a fictitious name under which Jim Ruby was doing business), while doing construction work for Freuhauf Trailer Company upon the latter's property caused an opening, hole, and excavation to be so carelessly and negligently left open and unguarded that plaintiff, while lawfully on the premises, fell into said opening and received injuries; defendant answered denying the material allegations of the complaint. The cause was tried to a jury and verdict and judgment were in favor of plaintiff for $6,000; defendant appeals from the judgment.

There was evidence of the following facts. In the course of the work in which defendant was engaged it was necessary to make an excavation which involved a breaking up of concrete, the cutting off and removal of steel rods and the removal of all material necessary in the excavation of a pit. Removal of the concrete was done by Air Power Tools Company, subcontractor of defendant, and it had been completed several days before the accident occurred. In this work the concrete was broken up, rods were cut, and the material was thrown out of the pit by hand onto the ground where it was picked up by hand and thrown into trucks to be hauled away. Defendant's contract was not completed; he still had to lower the pit to a uniform depth of 10 feet and line it with concrete. At the time of plaintiff's accident there was in existence an excavation 33 feet by 11 feet, which was at ground level at the west end and graduated to a depth of 9 feet at the east end. Plaintiff was an employee of Freuhauf, assembling trailers, and had come to work about 4 p. m., November 2, 1951, while some of defendant's employees were still at the location. Plaintiff was working on the northerly side of the pit about 10 feet distant therefrom when he decided to walk past the pit on the north side to a washroom. As he proceeded he stumbled on a steel bar or rod 3 or 4 feet long, which was lying on the ground 4 or 5 feet north of the pit and about midway between the easterly and westerly ends of the pit. His foot struck the bar; he lost his balance and went forward into the pit. There was no barrier around the pit. No witness observed plaintiff's fall into the pit. Plaintiff had observed work on the pit for

about a week, had looked into it and knew how deep it was. He testified that he believed the rod was a reinforcement rod; it had ridges on it; it was 3 or 4 feet long and maybe an inch thick. As he stumbled he did his best to alight on his feet in the bottom of the pit and he did alight on his feet but his legs doubled under him. There was a pile of dirt across the west end of the pit; there were some air hoses lying on the ground and some electric cords, which were not closer than 6 to 10 feet from the pit, and these were used in Freuhauf's work; he had not seen the iron rod before; he saw it from some distance after he was assisted and "hobbled" out of the hole but not before; he didn't examine the rod to see what it was. He glanced at it after he came out of the hole. He was in excruciating pain at the time. He was not sure whether the rod was something that was used by the Freuhauf people; it could have been, but he did not know.

As we have seen, the complaint charged negligence of defendant in failing to maintain a barricade around the pit. In plaintiff's brief it is argued that this was negligence. We shall dispose of this contention after we have discussed the claim of negligence in allowing the rod to lie on the ground.

The briefs argue the question whether there was sufficient evidence that defendant was guilty of a breach of duty. Plaintiff argues (1) it could have been inferred that the rod had been left by workmen of defendant or his subcontractor, since plaintiff testified it had ridges on it, and presumably it was the type of rod the subcontractor had been removing with the concrete; (2) if this were true defendant was chargeable with knowledge that the rod was there; (3) if someone else placed the rod there it could have been inferred that it had been there long enough for defendant to discover it; (4) as a necessary conclusion, that the condition was a dangerous one and defendant was negligent in failing to remove the rod.

With respect to defendant's replies to these arguments, it is sufficient to state that it is contended that plaintiff's version of the accident was incredible; the only charge of negligence in the complaint was the failure of defendant to maintain a barrier around the pit and plaintiff's claim that he stumbled over a steel rod was an afterthought; if plaintiff was walking parallel to the pit he would not have stumbled into it and if he did, he would not have landed on his feet;

defendant's witness McSweeney, a Freuhauf employee and lead man on plaintiff's shift, testified that plaintiff received his injuries while he and fellow employees, Montes and Bustamente, were jumping in the pit from the shallow end into sand toward the deeper end; also there was no evidence from which it could be inferred that defendant was responsible for placing the rod on the ground or that he had actual or constructive knowledge of its presence. Plaintiff could not plead one specific act of negligence and recover on proof of another. Although these arguments are plausible, it is unnecessary to discuss them.

It was alleged in the complaint that plaintiff was lawfully on the premises, meaning, we suppose, that he was not a trespasser. He says he has always supposed that he was an invitee of Ruby, but he alleged and has mentioned no fact that would indicate the existence of that relationship.

Defendant is accused of only passive negligence, consisting of the alleged failure to maintain the portion of the premises he was using in a reasonably safe condition. Whatever duty he had with relation to the condition of the premises arose out of the relationship between himself and the plaintiff. The only theory of the case plaintiff advanced in his briefs was that he was a business invitee. He cited *Louie* v. *Hagstrom's Food Stores, Inc.*, 81 Cal.App.2d 601 [184 P.2d 708], which he said is a case exactly in point. In that case the defendant, operating a food market, was held to a high quantum of care to keep his premises in a safe condition for his customers and chargeable with knowledge of an unsafe condition.

■ For reasons to be stated we are of the opinion that plaintiff's status was that of a licensee or a trespasser. Defendant was an occupier of that portion of the premises, use of which was necessary or incidental for the work he was doing for Freuhauf. Plaintiff, as an employee of Freuhauf, was its invitee, but this did not make him an invitee of defendant with respect to the area in and immediately surrounding the pit which defendant was using. They had no business together; plaintiff's presence in the vicinity of the pit was of no concern to defendant; the washroom was not maintained by defendant or under his control. It was not shown that it was necessary in order to reach the washroom for plaintiff to walk close to the pit; there was no evidence that he had followed that course before and no evidence that defendant had ever seen him in the vicinity of the pit. On

the day of his alleged injury plaintiff was upon a mission of his own. There was no basis in the evidence for an inference that his presence in this area at any time was invited by Ruby.

It could be argued with considerable force that plaintiff was not even a licensee in that it was not shown that he had either express or implied permission to walk around the edges of the pit. In view of the nature of the work that had been going on, and would continue until the pit was completed, it would be a reasonable assumption that Ruby would have preferred that strangers to the work would remain away from the pit and the area around it which he was using for deposit of the excavated material. But inasmuch as plaintiff was not a business invitee it is immaterial whether the facts would have justified a conclusion that he was a licensee of Ruby and not merely a trespasser.

Mr. Prosser in his work on Torts, page 609, says: "In general, the possessor of land is not liable for harm to trespassers caused by his failure to put the land in a reasonably safe condition for their reception, or to carry on his activities so as not to endanger them. . . . If the presence of the trespasser is discovered, the possessor is commonly required to exercise reasonable care for his safety as to any active operations the possessor may carry on, and possibly as to any highly dangerous conditions on the land." And as to licensees, page 625: "A licensee is a person who is privileged to enter upon the land by virtue of the possessor's consent. The possessor is under no obligation to exercise care to make the premises safe for his reception, and is under no duty toward him, except: To use reasonable care to discover him and avoid injury to him in carrying on activities upon the land." And further, page 631: "The licensee has no right to demand that the occupier change his method of conducting activities for his safety, and in the usual case, if he is fully informed as to what is going on, or it is obvious to him, he has all that he is entitled to expect, and assumes the risk thereafter."

If we assume, without so deciding, that plaintiff was a licensee complaining of an unsafe condition of the premises the applicable rule is the one stated in *Fisher* v. *General Petroleum Corp.*, 123 Cal.App.2d 770, 777, 778 [267 P.2d 841]: " ' . . . where a person goes upon the premises of another without invitation and simply as a bare licensee, and the owner of the property passively acquiesces in his

coming, if an injury is sustained by reason of a mere defect in the premises, the owner is not liable for negligence for such person has taken all the risk upon himself.' '' (See also *Koppelman* v. *Ambassador Hotel Co.*, 35 Cal.App.2d 537, 540 [96 P.2d 196]; *Oettinger* v. *Stewart*, 24 Cal.2d 133, 139 [148 P.2d 19, 156 A.L.R. 1221]; *Saba* v. *Jacobs*, 130 Cal. App.2d 717 [279 P.2d 826]; *Palmquist* v. *Mercer*, 43 Cal.2d 92 [272 P.2d 26].)

In his petition for rehearing plaintiff asserted that the question of the relationship between himself and Ruby was first raised by this court and he undertook to convince us that we were in error in our conclusion that plaintiff was, at best, a licensee. While still maintaining that he was a business invitee of Ruby he apparently contends that defendant had the same duty toward him if he was a licensee or trespasser as he would have had toward an invitee. He cites and quotes from *Fernandez* v. *Consolidated Fisheries, Inc.*, 98 Cal.App.2d 91 [219 P.2d 73] and *Fernandez* v. *American Bridge Co.*, 104 Cal.App.2d 340 [231 P.2d 548]. These were cases of active negligence. In the first the injury occurred when a truck was started up while the plaintiff was holding onto the door handle; in the second the plaintiff was injured when he was struck by two heavy steel ribs which were knocked over by the arm of a crane which was being used by defendant to remove the ribs. In each case it was stated that active and not passive negligence was involved. Plaintiff also cites *Hall* v. *Barber Door Co.*, 218 Cal. 412 [23 P.2d 279]. That was the case of a hidden defect in a door installed by defendant of which it had or should have had knowledge. The court said, page 420: 'We think the jury could have inferred that as left by defendant there was an implied invitation to use the door. The jury could also have found that as left by defendant the door was a dangerous instrumentality within the meaning of that doctrine as recently enunciated by this court in *Dahms* v. *General Elevator Co.*, *supra*, [214 Cal. 733 (7 P.2d 1013)], and that as constructed and left by defendant, it was in legal effect a trap of the existence of which it was defendant's duty to warn even licensees.'' *Grant* v. *Sunset Telephone etc. Co.*, 7 Cal.App. 267 [94 P. 368], also cited, was a case in which the defendant was held liable for injuries sustained by the plaintiff when the wheel of a cart he was driving was caught by a guy wire stretched across a commonly used roadway. Plaintiff's contention that Ruby owed him a duty to keep

the premises in a reasonably safe condition consists of mere assertions, unsupported by applicable authority.

There are other well settled principles which are pertinent to the question of defendant's duty toward the public. ▌ One is that a possessor of land has no duty toward persons who come upon the land to change the method of his operations which are carried on so openly as to be obvious to all observers (Prosser, p. 631, *supra*.) ▌ Another is that one who enters an uncompleted building takes the risk of using the premises in the condition in which he finds them. (*Mitchell* v. *A. J. Bayer Co.*, 126 Cal.App.2d 501 [272 P.2d 870] ; *Kolburn* v. *P. J. Walker Co.*, 38 Cal.App.2d 545, 549 [101 P.2d 747] ; *Irvine* v. *J. F. Shea Co., Inc.*, 41 Cal.App. 2d 458, 460 [107 P.2d 80] ; *Nagle* v. *City of Long Beach*, 113 Cal.App.2d 669, 671 [248 P.2d 799] ; *Ambrose* v. *Allen*, 113 Cal.App. 107, 113 [289 P. 169].) The reasons for this rule make it applicable not only to the interior of a building but also to the immediately surrounding area with respect to conditions of the surface caused by the presence of materials deposited thereon in the course of the work of construction and which are not hidden from view. Plaintiff stood by day after day fully aware of the manner in which debris was being thrown from the pit onto the surrounding surface. Defendant had no duty to discontinue that practice. Plaintiff had no right to expect that the premises would be cleaned up each day as Ruby's workmen left the job and Ruby had no duty to see that they were cleaned up.

The claim of negligence in failing to barricade the pit falls for the reasons previously stated. An additional ground of untenability would be that plaintiff had actual knowledge of the existence of the pit and therefore could not complain of the absence of a barrier as a warning of its presence.

It is unnecessary to discuss other contentions of defendant.

The judgment is reversed with instructions to enter judgment for defendant.

Wood (Parker), J., and Nourse (Paul), J. pro tem.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 8, 1956. Carter, J., was of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.