**F. W. HELDENFELS et al., Appellants,**

**v.**

**Roman HERNANDEZ, Appellee.**

**No. 4054.**

Court of Civil Appeals of Texas.

Waco.

March 21, 1963.

Rehearing Denied April 18, 1963.

Keys, Russell, Keys & Watson, Corpus Christi, for appellants.

Elmer H. Theis, Lyman & Sudduth, McDonald & Spann, Kleberg, Mobley, Lockett & Weil, Corpus Christi, for appellee.

TIREY, Justice.

This is a negligence case. Hernandez sued Heldenfels Brothers and three others for personal injuries sustained by him on the premises of his employer when he was run over by a backing loaded dump truck hauling hot-mix asphalt for resurfacing of private roads on the premises of his employer. On the verdict judgment was rendered against Heldenfels in plaintiff's favor for $20,500.00, and a take-nothing judgment was rendered in favor of the other three defendants. Heldenfels perfected their appeal and the cause is here on transfer.

Plaintiff was an employee of the Southwestern Oil & Refining Company as a common laborer to do sundry jobs about the premises. He would report for work before 7:30 o'clock A.M., and receive his orders for the day at an office which was located in a quonset hut located approximately 1000 feet from the main entrance to the plant premises. On April 17, 1953 he reported for work and received instructions to go from plant No. 2, where the office was located, to plant No. 1, which was several blocks distant and not adjoining plant No. 2. He and another employee were told to go to do similar work at plant 1, and they started walking from the office toward the main gate of the premises, walkon a road which was then being surfaced by Heldenfels with hot-mix asphalt. As they were walking on their left-hand side of the road, plaintiff on the inside, and the other workman next to the left-hand curb of the road, a dump truck, loaded with hot-mix asphalt which was backing toward the spreading machine, backed into and over Hernandez, brushing the other workman at the same time. Plaintiff sustained a fractured leg, a fractured pelvis, and associated injuries, which kept him off work for a short time. He returned to work for Southwestern Oil & Refining Company until he was laid off as a result of a reduction in force.

Southwestern Oil & Refining Company, prior to the accident, had entered into a contract with Texas Engineering Construction Company, Inc., to do various new construction on the premises of plant No. 2, including the construction and surfacing of plant roads. The Engineering Company prepared the base for the roads and constructed concrete curbing and gutters in preparation for asphalt paving. It then orally agreed with Heldenfels for them to furnish hot-mix asphalt from their plant to be hauled and laid on the roadway which had been prepared. Heldenfels then, by telephone, arranged for Huckman, a trucking contractor, to furnish dump trucks to haul the asphalt to the premises where a paving machine belonging to Heldenfels would be used to apply the asphalt. This machinery was operated by Heldenfels, as were the rollers which smoothed out the asphalt after it was spread by the machine.

Heldenfels arranged orally with defendant Young to furnish some, if not all, of the trucks actually used in hauling the asphalt. An employee of Young, while operating one of the trucks owned by Young, was backing a loaded truck to the hopper on the paving machine when plaintiff was struck and run over by the right rear wheels of the truck. It was necessary for the truck to back up to the paving machine in order that the asphalt could be dumped into the hopper so it could be transported by conveyor belts on the machine to the spreader on the opposite side of the machine. There was an operator of the machine who controlled its movement as it proceeded on rotating tracks. On the machine was a spreader-man who controlled the thickness of the asphalt as it was applied to the roadbed. There were two other employees of Heldenfels who smoothed out rough places in the paving after it was applied. Then there were two or three heavy rollers which smoothed out and rolled down the asphalt

as it was applied by the spreader and "touched up" by the two employees. There was another employee of Heldenfels Brothers called the "dumper" who worked at the hopper, and who released the tailgate on the trucks so that the load could be dumped into the hopper. The "dumper" would also shovel any spilled asphalt into the hopper and in general guided the truck to the proper place at the hopper, once the truck was within a few feet of the paving machine. For a day or two before the accident the paving operations on the road to the main gate had been in progress during the daylight hours. Heldenfels' employees would report to work before 7 o'clock and would quit before dark in the evening. Plaintiff had been familiar with the paving operations for a day or two before the accident. On that day plaintiff parked his car near the main entrance to the plant, went through the time hut at the main entrance and had proceeded to the office some 1000 feet from the main gate, going west by the paving machine which was operating at the time. Plaintiff saw a dump truck unloading asphalt into the hopper, which truck was backed up to the spreader. He saw the same or similar operation the day before. After reporting to the office he was directed by his foreman to go with another employee to plant No. 1 to dump chemicals into some water in tanks. The two men proceeded on the main road, admittedly knowing that the dump trucks would back up to the paving machine, and knowing the paving machine was between them and the main gate toward which they were walking. At the point where the truck backed into and over Hernandez there were some large overhead fans which were part of the operating equipment and machinery of the plant. These fans made a loud noise. Testimony was tendered to the effect that someone near the scene of the accident shouted when he saw that the dump truck was going to strike plaintiff, or had struck plaintiff. The driver stopped the truck within a few feet, but after the rear wheel had run over plaintiff, and before

the front wheels had touched him. The truck driver was blowing his horn, and the truck made lots of noise while running in reverse gear.

The judgment is assailed on what Heldenfels designates as 28 points. One is to the effect that since plaintiff was only a licensee as to appellants, and since the jury did not convict appellants of any affirmative negligence, but found only that they failed to provide a flagman or to give a signal to appellee and remove him from the path of a backing truck, there is no liability on the part of appellants. Appellants rely on the following factual situation to sustain their theory that appellee was only a licensee. Appellants had no contract with the Southwestern Oil & Refining Co., but were subcontractors of the engineering company, and as such "stood in its shoes" as to the paving. Appellants, before proceeding with the work, had put up barricades closing off that portion of the private road which was being paved. The premises were private property, and the public was not allowed to enter. When appellee reported for work about 7:30 o'clock in the morning on the day of the accident at plant No. 2, plaintiff was told to go to plant No. 1 to do certain work at that plant which was some distance from plant No. 2. It was possible for appellee to have walked off of the main roadway a few feet, since there were walkways under the cooling fans just north of the roadway. Appellee had no business connection whatsoever with the appellants or the contractor. At the time he sustained his injuries he was proceeding under his employer's instructions to go to plant No. 1. He was walking along the main roadway of plant No. 2. Appellee testified to the effect that his foreman had told him not to walk on the south one-half of the road which had been paved.

This case turns on the question of whether the contractor owed plaintiff a duty to furnish a flagman or signalman or to give him a warning signal as a pedestrian on land occupied by the contractor in order to

perform the resurfacing contract with the owner. This question, in turn, hinges initially on whether plaintiff was an invitee or was a licensee.

In solving this question decisions involving relationships between a contractor and the employees of a subcontractor, master and servant, owner or contractee and the employees of a contractor, and those concerning public contracts, streets, sidewalks and highways, or business invitees are not helpful. The problem concerns a limited and restricted field in the law of negligence, to which other situations are not analogous. Completely variant rights, duties and liabilities exist in those instances by virtue of the relationship of the respective parties. We are not here concerned with the relationship of plaintiff to his own employer, or with premises occupied by that employer as owner. The rights of plaintiff and the consequent duty of the contractor (the derivative position occupied by Heldenfels) is determined by plaintiff's status in relation to the contractor. We oversimplify the issue in order to see it in its true light: Is plaintiff, an employee of the owner or contractee, an invitee of that contractor (who has become occupant of the private premises where the injury occurred in order to perform a resurfacing contract)?

It is axiomatic that the contractor's mere sufferance, acquiescence or tolerance of entry by plaintiff—even express or implied permission to enter the area—would not of itself create the status of invitee on the premises where the work was being done. The question is not simply whether plaintiff had a lawful right to enter. If he entered without any right, of course, he would be a trespasser. 30-B Tex.Jur. Sec. 56, p. 242. Plaintiff quotes general principles to the effect that mutual benefit to the "owner" of premises and the injured person, (e. g., Burton Construction & Shipbuilding Co. Inc. v. Broussard, 154 Tex. 50, 273 S.W.2d 598; Cowart v. Meeks, 131 Tex. 36, 111 S.W.2d 1105), is an element establishing invitee status. Such decisions involved the liability of the actual "owner" of the land

as defendant. We are not here concerned with the "owner", but with the occupier. In this respect the contractor, as occupant placed in possession by the owner or contractee, bears the same relationship in so far as necessity for mutuality of benefit is concerned. The plaintiff in the present case was on a mission for a third person, his employer, when injured; and his presence on the premises occupied by the contractor entailed no benefit to the latter.

There is evidence in this case from which it may be deduced that plaintiff's employer, the owner, expressly or impliedly permitted or invited him to use the area occupied by the contractor on which the resurfacing was being done, in performing his duties to his master. Plaintiff insists this removed him from the status of licensee as to the contractor. This evidence might well be material to the relationship between plaintiff and his employer if the latter had not relinquished possession of the resurfacing area to the contractor; but did it make plaintiff the contractor's invitee? It is our view that it did not.

Remarkably, there appear to be no Texas decisions involving the liability of a contractor to servants of the owner or the status of the servant, where the servant does not enter the private premises occupied by the contractor on a mission connected with performance of the contract. We have found few such cases from other jurisdictions. Some of these involve active negligence, "traps" and pits, wilful injury, or inherently dangerous instrumentalities, and are not applicable.

In Allen v. Jim Ruby Construction Co., 138 Cal.App.2d 428, 291 P.2d 991, plaintiff, an employee of the owner-contractee, was injured when he fell over a rod on his way to a washroom on his employer's premises. The negligence charged against the contractor was failure to erect a barricade on the portion of the employer's premises on which the contractor was performing work for plaintiff's employer. The court said, "Defendant was an occupier of that

portion of the premises, use of which was necessary or incidental for the work he was doing for Freuhauf", plaintiff's employer. "Plaintiff, as an employee of Freuhauf, was its invitee, but this did not make him an invitee of defendant with respect to the area" where the injury occurred. That case differs because plaintiff had not followed the path previously and defendant had not seen him there, but this distinction could not properly be a part of the rationale under Texas law, and the court quotes authorities to the effect that acquiescence would not alter status as a licensee. It was held the contractor had no liability to the employee for failure to barricade the area, and owed him no duty as to passive negligence.

In Forgione v. Frankini Construction Co., 308 Mass. 29, 30 N.E.2d 819, the plaintiff was an invitee of the owner or general contractor, awaiting employment. While leaving the premises he tripped over a foundation rod in an area on which a subcontractor was performing construction work for the owner. It was held the subcontractor violated no duty to plaintiff in failing to warn.

In Bolch v. Smith, 158 Eng. Reprint 666, 6 L.T.N.S. 158, the contractor was performing work on the employer's premises in an area which crossed the path to a water-closet furnished by the owner for its employees' use. An employee of the owner was injured by the contractor's machinery while returning on the path from the closet. In holding the contractor breached no duty to the owner's employee, the court held: "The defendant had a right to erect the machinery, to erect it in the place he did, and to work it in the manner he was doing. Then, what is the true condition of plaintiff? It is said that he had a right to go along the path across which the machinery was erected, for he was a workman employed by the dockyard, and had liberty to use the water-closet. But that is a fallacious argument. It is true that plaintiff had permission to use the path. Permission involves leave and license, but it gives no right." It was held that since no "trap" was created, no duty existed. We have found no other cases considering these questions.

■ Plaintiff had the burden of establishing duty on the part of the contractor. This burden is not discharged by proof of unilateral invitation by the owner in which the contractor as rightful occupier of the working area had no part. We think plaintiff was a licensee as to the subcontractor, and defendant's duty is restricted to that owed to a licensee.

■ What is the extent of that duty here? An occupier or owner may owe to a licensee a duty to warn him of concealed hazardous conditions. The condition here was not hidden. Plaintiff knew Heldenfels' operation required the movement of asphalt trucks to the spreader on the barricaded area; and he knew they were required to move on the path he traveled. Did the contractor, then, owe the licensee a duty to notify him of what may be conceived of as a change in condition, from that of a stationary to a moving truck? Plaintiff likewise knew this condition was likely to be altered at any time, under the jury finding. He knew the dump truck was required to back up to the asphalt spreader, and that his employer's equipment reduced his ability to hear its approach. We think appellants breached no duty owed to plaintiff in the respects found by the jury.

Being of the foregoing view, we think the Court erred in refusing to sustain appellants' motion to disregard the answers to issues relating to appellants' liability and enter judgment for appellants. This view makes it unnecessary for us to discuss any of the other questions presented.

Accordingly, the judgment rendered in behalf of the plaintiff against appellants is reversed and here rendered that appellee take nothing as against the appellants. The judgment of the trial court in favor of the other defendants is affirmed. It is further

ordered that all costs in this cause be taxed against appellee. Accordingly, the judgment is reversed and rendered in part, and in part affirmed.