Roman HERNANDEZ, Petitioner,

v.

F. W. HELDENFELS et al., Respondents.

No. A–9623.

Supreme Court of Texas.

Nov. 27, 1963.

Rehearing Denied Jan. 8, 1964.

Lyman & Sudduth, McDonald & Spann, Corpus Christi, for petitioner.

Kleberg, Mobley, Lockett & Weil, Elmer H. Theis, Keys, Russell, Keys & Watson, Corpus Christi, for respondent.

NORVELL, Justice.

Roman Hernandez recovered a judgment against Heldenfels Brothers, a partnership, based upon personal injuries suffered by him when he was struck by a truck loaded with asphalt. The Court of Civil Appeals reversed upon the ground that Hernandez was a mere licensee upon the premises where he was injured and that Heldenfels, as the "occupier" of such premises was not guilty of a breach of duty owed to Hernandez. Tex.Civ.App., 366 S.W.2d 641. The premises were owned by Southwestern Oil & Refining Company who was the employer of Hernandez. At the time of injury, Hernandez and another employee, Martinez, were on the company's property going from one place to another within the company's Plant No. 2 under express orders of a superior in the company's organization. In our opinion, Her-nandez as a servant of the owner of the property going from one place to another within the confines of the plant was not a licensee of Heldenfels. His legal status was akin to that of an invitee in that the occupancy of Heldenfels was not of such a nature that employees of Southwestern Oil & Refining Company had no right to be upon the premises except by leave of Heldenfels.

The following is a brief summary of the pertinent facts:

At approximately 7:00 a. m. on the morning of April 17, 1953, Hernandez entered the main gate of the company's Plant No. 2, and walked along a private driveway to a quonset hut or warehouse where he reported for work. This quonset hut was situated approximately 1000 feet from the gate. This driveway was being rebuilt by Texas Engineering Construction Company, Inc. under a contract with Southwestern Oil & Refining Company. Texas Engineering had constructed concrete curbs and gutters and installed a caliche roadbed. Heldenfels as a subcontractor under an oral agreement, had begun to lay the asphalt topping on this road. A barrier to stop vehicular traffic during the topping operation had been placed at the main entrance to the plant and the road area was occupied in part by an asphalt spreader and trucks carrying asphalt to the spreader. It appears, however, that Southwestern's employees continued to walk on and along the roadway during the road rebuilding operations in order to get from the main gate to specific areas on the plant property.

Upon reporting for work, Hernandez and Martinez received directions from their foreman to report to Plant No. 1 which was nonadjacent and some blocks distant from Plant No. 2. They were instructed to return to the main gate for transportation to said Plant No. 1. The foreman told them to walk along the north or left side of the private roadway as Heldenfels had laid a second coat of asphalt along the south side the day before which would probably be soft and sticky. Hernandez was

struck and Martinez brushed by an asphalt truck at a point approximately 300 feet east of the quonset hut as they were walking toward the main entrance gate. Near the area where the accident occurred, some large overhead fans had been installed which were in operation as a part of the plant's equipment. These fans were noisy and probably made it difficult to hear trucks operating in the area. The asphalt spreader was near the main entrance to the plant and Hernandez was struck by a dump truck which was traveling in reverse along the north or left-hand side of the road (from Hernandez' standpoint), toward the asphalt spreader for the purpose of loading the spreader with asphalt.

All defendants except Heldenfels' were absolved of liability by the jury's findings. As to Heldenfels Brothers, the jury found that they were in control of the hauling, spreading and rolling of asphalt upon the roadway; that they were negligent in failing to provide an employee or watchman "to see to it that the area was clear of pedestrians behind the truck which backed over Roman Hernandez" and that they were negligent in failing to give a visual signal "to warn a pedestrian situated as was Roman Hernandez." Accompanying proximate cause issues were also answered in Hernandez' favor.

The jury found against Heldenfels upon issues submitting the defenses of voluntary exposure to risk and contributory negligence. Judgment on the verdict was rendered in favor of Hernandez for the amount of damages found by the jury, namely, $20,500.00.

■ It has been stated that the only duty owed by an owner of property toward a licensee upon such property is the duty not to injure such licensee wilfully, wantonly or through gross negligence. Carlisle v. J. Weingarten, Inc., 137 Tex. 220, 152 S.W. 2d 1073. This rule has been stated in somewhat different language and it is applicable to an occupier of land, who may not be an owner but·is entitled to exclusive control

thereof. See, Bustillos v. Southwestern Portland Cement Co., Tex.Com.App., 211 S.W. 929; Holt v. Fuller Cotton Oil Co., Tex.Civ.App., 175 S.W.2d 272, wr. ref.; Gonzalez v. Broussard, Tex.Civ.App., 274 S.W.2d 737, ref. n. r. e.; Schroeder v. Texas & Pacific Ry. Co., Tex.Civ.App., 243 S.W.2d 261, no wr. hist. Sections 331 and 342, American Law Institute's Restatement of the Law of Torts; 38 Am.Jur. Negligence, §§ 104 and 105; 65 C.J.S. Negligence §§ 32 et seq.

■ Under the facts of this case, however, we are unable to agree with the Court of Civil Appeals that Hernandez was a mere licensee. The thesis of the appellate court is that as Heldenfels was the occupier of the premises—the roadway in question—and Hernandez had no business with Heldenfels and was not engaged in furthering Heldenfels' interest in any way, he was necessarily a licensee. Had Heldenfels been entitled as a matter of right to an exclusive possession of the premises as against the owner, this theory might be tenable. However, as we view the record, there is no evidence that Southwestern, as the owner, granted to Texas Engineering or to Heldenfels an exclusive right. Heldenfels Brothers had the right to occupy such portions of the roadway as were necessary for them to use in carrying out the obligations which they had assumed as a subcontractor, but they did not have the right to bar the owner and its employees therefrom. In order to reach the quonset hut where the time clock was located and where he reported to work, Hernandez walked along the roadway. Upon returning to the main entrance from the quonset hut, as directed by his foreman, he was walking on the roadway where his superior told him to walk. His position on the roadway at the time he was injured was not due to any leave of Heldenfels but under right of his employer,—the owner of the premises. In our opinion, there is no evidence to suggest that Heldenfels' use of the roadway for the purpose of placing an asphalt top thereon was intended to preclude a use thereof by the owner's employees in

going from one section of the plant to another. Both Heldenfels and Hernandez were using the roadway because the interests of Southwestern as the owner required such use. Both, in a sense, were invitees of the owner and the fact that the roadway was a private way does not vary the legal consequences of substandard action from that encountered when two persons are equally entitled to make use of a public road. Each owes a duty to prevent injury to the other through negligence. The case was submitted to the jury upon issues of negligence and contributory negligence and in our opinion such submission was correct.

Respondent cites a number of cases which hold that when an employee of the owner of premises goes upon a particular portion of such premises, which are under the control of a contractor for the purpose of erecting structures thereon or making repairs thereto, such person is not an invitee of the contractor. In most of these cases the purpose for which the injured person went upon the portion of the premises occupied by the contractor was regarded by the courts as being one which was personal to the injured party rather than in furtherance of his employer's interests.

The facts in the case of Gile v. J. W. Bishop Co., 184 Mass. 413, 68 N.E. 837, are similar to those presented by the present record. The defendant was engaged in the alteration of structure upon the premises of the City Manufacturing Company which continued with its business operations during the construction period. The plaintiff was the employee of the City Manufacturing Company and lawfully upon the premises in furtherance of the business of the manufacturing company when injured. The defendant contended that under the circumstances the plaintiff was a mere licensee and that the defendant owed him no duty, except to refrain from wilfully or wantonly injuring him. The Supreme Judicial Court of Massachusetts stated in its opinion that:

"The defendant was not in exclusive occupation of the yard and grounds of the City Manufacturing Company. It used them so far as was necessary for the convenient performance of the work which it had undertaken, and at the same time the employés of the company were expected to use them so far as was necessary or proper in the prosecution of the business of that company. The defendant was therefore bound to exercise reasonable care in reference to these employés who were rightfully there."

In Kitchen v. Riter-Conley Mfg. Co., 207 Pa. 558, 56 A. 1083, it appeared that according to a jury verdict Kitchen, an employee of the Carnegie Steel Company, was injured through the negligence of employees of the Riter-Conley Manufacturing Company. It was urged upon appeal that the jury should have been instructed that Kitchen was a trespasser when injured. The particular work being done by Riter-Conley at the time of Kitchen's injury was the construction of an inclined railway to carry ore from the bins to the top of a blast furnace. This was a part of the work being done by Riter-Conley for the Carnegie Steel Company in enlarging its blast furnaces. Kitchen was conveying a message from his employer, the Carnegie Steel Company, to the Superintendent of Riter-Conley. However, the circumstance that the receiving of the message may have been in furtherance of Riter-Conley's business was not given as the principal basis of the Pennsylvania Supreme Court's decision. The Court said:

"The distinction between the relative rights of a trespasser and a licensee is not important, in view of the facts in this case. The defendant was not the owner of the premises where the construction work was being done. It was only entitled to such occupancy and use as might be necessary to enable it to perform its contract with the owner. No one who did not interfere with its work or come within the range of its operations could, in any sense of the word, be considered a trespasser, in so

far as it was concerned. The plaintiff's employer was the owner of the premises where the accident occurred, so that no permission or license from the defendant company was required to entitle the plaintiff to be there, so long as he did not interfere with the construction work, or wander heedlessly into dangerous proximity to it. The evidence shows that the plaintiff was hurt while standing or walking upon a paved walk or passageway over which people had been passing frequently. He was not struck directly by the falling portion of the inclined railway, but by some timbers that were carried down as a result of the first crash. It does not appear that he had any reason to suppose he was in danger at the spot where he was hurt. If he was there in the performance of his duty, then he was entitled to protection from dangers arising from the negligence of defendant. The precaution which the defendant company was bound to take was not especially to protect the plaintiff, but it was bound to include within the scope of its forethought, and, so far as reasonable prudence would dictate, to guard against, injury to any one who might lawfully and properly be using the premises where the work of construction which they had in charge was in progress."

The rule announced in the Massachusetts and Pennsylvania cases above discussed seems to be supported by the weight of authority as well as the better reasoning. In a monograph covering the subject of "Personal liability of contractor in respect to injuries sustained by persons other than the contractee during the progress of stipulated work," appearing in 38 A.L.R. 406, it is said under the subhead, "Liability of contractor to servants of principal employer," (p. 455) that:

"For injuries occasioned to a servant of the principal employer by negligence on the part of the contractor which produces abnormally dangerous conditions upon premises which remain in the possession of the principal employer while the stipulated work is in progress, the contractor is ordinarily liable. Whether, under such circumstances, the contractor is entitled to avail himself of the defense that the injured person was, in respect of the portion of the premises where his injury was received, a mere licensee, is a question to be determined with reference to the particular facts involved."

■ One of the controlling facts in cases such as this is the nature of the contractor's possession. If it be conclusive as against the owner, the owner's employees may be trespassers or licensees upon the property depending upon whether their entry was unlawful or permissive and many authorities cited by the respondent so hold. It may also be recognized that the entire premises need not be considered as a unit for a person may be a trespasser or licensee as to a certain portion only. See, Allen v. Jim Ruby Construction Company, 138 Cal.App. 2d 428, 291 P.2d 991; Burton Construction & Shipbuilding Co. v. Broussard, 154 Tex. 50, 273 S.W.2d 598. In the present case the roadway connected the main gate of Southwestern's Plant No. 2 and the quonset hut which served as the place where its employees reported for work. An owner of property, absent some contractual arrangement to the contrary, has the right of access to and user of his property. It was under this right that Hernandez was instructed to make use of the roadway by his employer. At the time of injury, he was not using the roadway by leave or license of Heldenfels. It is this circumstance that primarily distinguishes this case from those relied upon by the Court of Civil Appeals.

■ If we consider that Hernandez occupied a legal position similar to an invitee, it cannot be said that the dangerous instrumentality which resulted in Hernandez' injury was open and obvious within the meaning of that phrase as used in the "invitee" cases. Generally the conditions referred

to are static, such as holes and pits in the ground, broken stairways and the like. If such "conditions" be movable in part, such movement is generally rigidly circumscribed and easily predictable. McElhenny v. Thielepape, 155 Tex. 319, 285 S.W.2d 940. In the present case, the instrumentality which caused injury was a loaded asphalt truck, moving in reverse and approaching Hernandez from the rear. The fact that Hernandez or anyone else could have observed moving trucks upon the roadway does not present an open and obvious condition which could be related to his injury. Cf. Hall v. Medical Building of Houston, 151 Tex. 425, 251 S.W.2d 497; Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 209 A.L.R.2d 853.

It is our opinion that the jury's findings of negligence on the part of Heldenfels, as well as the findings that Hernandez was not contributorily negligent, have support in the evidence. The same is true of the finding that Hernandez did not voluntarily expose himself to the risk which resulted in his injury.

We are further of the opinion that none of the matters raised in the brief of respondent as appellant in the Court of Civil Appeals and not passed upon by that court call for a reversal of the trial court's judgment. Many of these points are inferentially passed upon by what has been heretofore said. Others relate to the admission of allegedly improper testimony. The record of the testimony in this case is unnecessarily long. Much of it is repetitious in nature. Some inadmissible testimony was received, but nothing has been pointed out which demonstrates that the receipt of such evidence probably caused the entry of an improper judgment in the case. Rule 503, Texas Rules of Civil Procedure.

It is also urged that the trial court erred in failing to submit an issue of unavoidable accident. It is said that a jury could infer that Hernandez' injuries resulted from the noise of the plant machinery and the overhead fans heretofore mentioned rather than from the negligence of one or more of the parties. It appears that respondents were familiar with the noisy conditions in the plant. Their supervisor and employees had worked for over a day in the noise area. In our opinion, the question of unavoidable accident is not in this case. Hicks v. Brown, 136 Tex. 399, 151 S.W.2d 790; Collins v. Smith, 142 Tex. 36, 175 S.W.2d 407.

Respondents, as appellants in the Court of Civil Appeals, presented a number of points complaining of various rulings and actions of the trial court relating to the deposition of Hernandez taken under an agreement of the parties which permitted Hernandez "to make any necessary correction therein in accordance with the rules of civil procedure, i. e., a single line will be drawn through any words to be deleted and the witness in his own handwriting (will insert) any words substituted therefor or added thereto." See, Rule 209, Texas Rules of Civil Procedure.

The circumstances concerning the taking of this deposition are unusual to say the least. On September 15, 1955, four months after the suit was filed, Hernandez' oral deposition was taken and the questions and answers transcribed upon 118 typewritten pages. Hernandez, however, did not immediately sign the deposition. When ordered to do so by the trial judge he signed the same but submitted an affidavit in connection therewith stating in substance that he was confused as to some of the questions and answers. This occurred on December 2, 1958, over three years after the deposition was taken. On January 6, 1959, the judge ordered the affidavit stricken but allowed Hernandez to make line by line changes in his answers contained in the deposition. Hernandez made over a hundred changes in his deposition answers and referred to a statement which was not attached to the deposition as giving his reasons for making such changes. Upon the trial, the presiding judge allowed both the original answers and the corrected answers to be read to the jury. He also permitted

a portion of the affidavit theretofore stricken to be read to the jury, apparently upon the theory that the statement purported to explain the changes made by Hernandez. It further appears that Hernandez was treated for a mental condition diagnosed as schizophrenia. He was in a state hospital at the time of trial and respondents filed a second motion for a continuance in the case supported by an affidavit of a physician stating that in his opinion Hernandez' mental condition in a month's time would be such that he could appear and testify personally. Respondents argue that in view of the numerous changes made in the deposition by Hernandez, he should have been made available for cross-examination if possible and that consequently the refusal of the court to grant the second continuance constituted an abuse of discretion.

In our opinion none of the complaints with reference to the deposition and the refusal to grant a continuance present a case of reversible error. Despite the overlengthy statement of evidence contained in the record the essential facts stand out reasonably clear. Upon his way back to the main gate, Hernandez was accompanied by Ramon Martinez, whose testimony in the main supported Hernandez' deposition testimony as to how the accident occurred. Both testified that they looked back at times to see if trucks were approaching and failed to see any. The main complaint of respondents as to Hernandez' change in the deposition seems to be that he changed his answer to the questions as to whether he knew trucks were "backing up" on the roadway from "yes" to "I do not know." Both answers were read to the jury and despite the admitted irregularity concerning the correcting of the deposition and the admission of the statement with reference thereto, we are unable to say that such matters probably caused the rendition of an improper judgment. Rule 503.

The matter of granting a continuance rests within the sound discretion of the trial judge. Here we are concerned with a second motion in a long-delayed case. The trial court was confronted with a situation involving a litigant laboring under a mental disability. In deciding that a trial of the cause would not be prejudicial to the respondents, he did not abuse the discretion vested in him by law. The factual situation disclosed in the opinion rendered in Sears, Roebuck & Co. v. Jones, Tex.Civ. App., 303 S.W.2d 434, ref. n. r. e. bears some resemblance to that presented in this case and it was there held that the court did not abuse its discretion in refusing a continuance.

Being of the opinion that the Court of Civil Appeals erred in reversing the judgment of the trial court and being further of the opinion that none of the points of error presented in respondents' brief in the Court of Civil Appeals and not considered by that court call for a reversal of the judgment of the trial court, it is accordingly ordered that the judgment of the Court of Civil Appeals be reversed and that of the trial court affirmed.

## ON MOTION FOR REHEARING

In our original opinion we stated that, "The foreman told them (Hernandez and Martinez) to walk along the north or left side of the private roadway as Heldenfels had laid a second coat of asphalt along the south side the day before which would probably be soft and sticky." Respondents question the accuracy of the statement that the foreman told the workmen to walk on the north side of the road. It is quite apparent from the record that the foreman assumed that Martinez and Hernandez would use the roadway as it was the most direct way from the quonset hut to the main gate. While he did not say in so many words, "walk on the north side," this direction can be reasonably, if not necessarily, inferred from the direction to stay off the portion of the road which had been covered by fresh asphalt. It was possible for Hernandez to have reached the gate by not going upon the roadway at all, but the jury found that he did not voluntarily expose himself to injury in making use of

the road. The dominant basis of our decision is that there was no showing that Heldenfels Brothers had exclusive possession of the roadway insofar as Southwestern Oil & Refining Company (the owner of the premises) and its employees were concerned. There is nothing contained in respondents' motion for rehearing which persuades us that this basic holding is incorrect.

The motion for rehearing is overruled.