Opinion filed February 28, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00059-CV
_____

## IN THE INTEREST OF D.R.T., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 43,519-C**

## MEMORANDUM OPINION

Richard Christopher Thuman and Helen Frost Thuman sued each other for divorce and, among other things, sought managing conservatorship of their child, D.R.T. Jonathan I.J. Martindale and Marla Kay Martindale attempted to intervene, but the trial court determined that they lacked standing. We affirm.

### I. *Background Facts*

Richard Christopher Thuman, commonly referred to as "Chris," and Helen Frost Thuman are the parents of D.R.T., a child. Marla Kay Martindale is Chris's biological mother and the paternal grandmother of D.R.T. Jonathan I.J. Martindale is Chris's stepfather and the paternal step-grandfather of D.R.T. Marla and Jonathan timely filed an Original Petition in Intervention of Grandparents in Suit

Affecting the Parent-Child Relationship, seeking sole managing conservatorship of D.R.T. or, in the alternative, joint managing conservatorship of D.R.T. After several hearings, the associate judge, to which the case had been assigned by the referring judge, appointed Chris and Helen temporary joint managing conservators of D.R.T. and provided Chris the exclusive right to establish the child's primary residence. Marla and Jonathan sought a de novo hearing before the referring trial judge, and the case was set for hearing.

Chris and Helen jointly filed an objection to Marla and Jonathan's petition to intervene and argued that Marla and Jonathan lacked the necessary standing to intervene in their divorce suit. In response, Marla and Jonathan moved for a continuance and requested that the court give them more time to complete discovery before it ruled on their standing to intervene. At the de novo hearing, their motion for continuance was overruled by the trial court.

The court later granted the motion to strike Marla and Jonathan's petition, based on its finding that the appointment of either parent as sole managing conservator or both parents as joint managing conservators would not significantly impair D.R.T.'s physical health or emotional development. The court ultimately concluded that Marla and Jonathan lacked standing to intervene in the divorce suit and found that the appointment of Chris and Helen as joint managing conservators was in the best interest of D.R.T.

II. *Issues Presented*

Appellants present fifteen issues on appeal. In issues one through three, Appellants challenge the trial court's finding of fact number five, by which the court found that appointing D.R.T.'s parents as joint managing conservators would not significantly impair the child's physical health or emotional development. In issues four through six, Appellants challenge the trial court's finding of fact

2

number six, by which the trial court found that appointing D.R.T.'s parents as joint managing conservators was in the child's best interest.

In issues seven and eight, Appellants challenge the trial court's denial of their motion for continuance. In issue nine, Appellants challenge the trial court's finding of fact number three, by which the trial court found that Appellants did not request leave to intervene in the divorce suit. In issues ten through twelve, Appellants challenge the trial court's finding of fact number four, through which the trial court denied Appellants leave to intervene in the suit.

Finally, in issues thirteen through fifteen, Appellants challenge the trial court's conclusion of law that Appellants lacked standing to intervene in this suit. In responding to and analyzing Appellants' fifteen issues, the court groups these issues into the following three distinct questions:

> (1) <u>Issues One through Six and Ten through Fifteen</u>: Did the trial court abuse its discretion when it found that Appellants lacked standing to intervene in the divorce suit?

> (2) <u>Issue Nine</u>: Did the trial court abuse its discretion when it found that Appellants did not request leave to intervene in the divorce suit?

> (3) <u>Issues Seven and Eight</u>: Did the trial court abuse its discretion when it overruled Appellants' motion for continuance?

As we explain below, the answer to all three questions is "no."

### III. *Standard of Review*

We review a court's determination that a grandparent lacked standing to intervene in a pending divorce proceeding under an abuse of discretion standard. *Whitworth v. Whitworth*, 222 S.W.3d 616, 621 (Tex. App.—Houston [1st Dist.] 2007, no pet.). We also review a trial court's denial of a motion for continuance under an abuse of discretion standard. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002). A trial court abuses its discretion when it acts in

3

an unreasonable or arbitrary manner or when it acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). A court does not abuse its discretion if some evidence supports its decision. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

By their nature, custody disputes are inherently fact-intensive. *In re De La Pena*, 999 S.W.2d 521, 529 (Tex. App.—El Paso, 1999, no pet.). The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we defer to that credibility analysis. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). We may not reverse for abuse of discretion merely because we disagree with the trial court's decision. *Downer*, 701 S.W.2d at 242.

### IV. *Analysis*

#### A. Standing

A party seeking conservatorship of a child must have standing to seek such relief. *In re SSJ–J*, 153 S.W.3d 132, 134 (Tex. App.—San Antonio 2004, no pet.). Section 102.004(b) of the Texas Family Code governs standing for grandparents and other nonparents seeking to intervene in a suit affecting the parent-child relationship. TEX. FAM. CODE ANN. § 102.004(b) (West 2008). Section 102.004(b) provides in part:

> [T]he court may grant a grandparent or other person deemed by the court to have had substantial past contact with the child leave to intervene in a pending suit filed by a person authorized to do so under this subchapter if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development.

In a family law case, when a party is statutorily required to establish standing with "satisfactory proof," the applicable evidentiary standard is by a preponderance of

4

the evidence.  *In re R.D.Y.*, 51 S.W.3d 314, 325 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

Section 102.004(b) creates a strong presumption in favor of parental custody, and a nonparent will not satisfy her burden by offering evidence that she would be a better custodian of the child.  *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990).  Rather, for a nonparent to show that appointment of either parent as sole managing conservator or both parents as joint managing conservators would significantly impair the child, the nonparent must offer evidence of specific acts or omissions of the parent that demonstrate that an award of custody to the parents would cause physical or emotional harm to the child.  *Whitworth*, 222 S.W.3d at 623.  There must be evidence to support the logical inference that some identifiable behavior or conduct of the parents will probably cause that harm, and the link between the parents' conduct and harm to the child may not be based on evidence that merely raises a surmise or speculation of possible harm.  *Id.*

Appellants allege that they established their standing to intervene in this suit under Section 102.004(b)[1] based on evidence of (1) past physical abuse of Helen by Chris, (2) Helen's severe neglect of D.R.T., (3) past and current substance abuse by both Chris and Helen, (4) Helen's immigration status, and (5) Chris and Helen's "negative morality."  We address each of these allegations.

### 1. Physical Abuse

As to the alleged physical abuse of Helen by Chris, there was conflicting evidence as to the number and severity of incidents of physical abuse.  The only incident of physical abuse to which both Chris and Helen testified to occurred when Chris once slapped Helen across the face several years ago.  Helen gave testimony of other allegations of physical abuse by Chris, but the trial court was

---

[1]Marla makes a claim under Section 102.004(b) as the biological grandmother of D.R.T. Although not biologically related to D.R.T., Jonathan is also qualified to submit a Section 102.004(b) claim, based on the court's finding that he had maintained substantial past contact with the child.

free to disbelieve this testimony. *See In Re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). Appellants have failed to show how any isolated incidents of physical abuse, which occurred during a now dissolved marriage, would substantially impair D.R.T.'s physical health or emotional development.

### 2. *Neglect*

Appellants further allege that Helen severely neglected D.R.T. by remaining in an abusive marriage. This argument is without merit. The Texas Supreme Court has held that evidence that a parent is a victim of spousal abuse is no evidence that awarding custody to that parent would significantly impair the child. *See Lewelling*, 796 S.W.2d at 168 (stating that just "[a]s the abuser cannot take advantage of his acts of abuse in a custody battle with the abused, so the abuser's parents also may not benefit from that abuse"). Appellants have failed to establish that this evidence shows that Helen neglected D.R.T.

### 3. *Substance Abuse*

Appellants also allege that Chris and Helen continue to suffer from alcohol and drug abuse that will cause substantial impairment to D.R.T. Appellants advance no specific claim as to how such alleged abuse will negatively affect D.R.T. in the future, and they offer no evidence of any past harm caused to D.R.T. by either parent's alleged substance abuse.

During the divorce proceedings, Chris admitted to heavy consumption of alcohol and frequent marihuana usage leading up to the commencement of the divorce suit, but Chris stated that he had since limited his alcohol consumption and that he no longer smoked marihuana. Chris had two prior DWI convictions, but both offenses occurred before the birth of D.R.T. Chris also acknowledged past usage of methamphetamine but noted such usage was more than ten years ago. The trial court considered Chris's testimony and ultimately determined that his past

drug usage, prior DWI convictions, and past and current alcohol consumption would not result in significant impairment to D.R.T.

Helen testified to prior heavy consumption of alcohol but testified that she had recently completely stopped drinking. Helen also testified to prior usage of methamphetamine and cocaine but noted that such usage was more than five years ago. The trial court considered Helen's testimony and ultimately determined that her past alcohol consumption and drug usage would not significantly impair D.R.T.

Appellants have failed to connect any current substance abuse by either Chris or Helen to D.R.T., and they have failed to establish how any alleged abuse would significantly impair D.R.T. in the future. Although Chris and Helen both admitted to prior illegal drug use, this behavior is not necessarily indicative of either's present fitness as a parent. *See Critz v. Critz*, 297 S.W.3d 464, 475 (Tex. App.—Fort Worth 2009, no pet.) ("If the parent is presently a suitable person to have custody, the fact that there was a time in the past when the parent would not have been a proper person to have such custody is not controlling.") (quoting *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi 1992, writ denied) (op. on reh'g)). The trial court could have reasonably determined that Chris and Helen's past substance abuse would not affect either's current ability to provide and care for D.R.T.

### 4. Immigration Status

Appellants further contend that Helen's immigration status will cause substantial impairment to D.R.T. In support of this argument, Appellants suggest that Helen's immigration status will prevent her from ever getting a job and will force her to be financially dependent on others.

Appellants' argument improperly relies on speculation. *See Whitworth*, 222 S.W.3d at 623. At the time of the hearing, Helen had not been asked to leave the

United States and was not incarcerated for any violation of this country's immigration laws. Although Helen was unemployed at the time of the custody proceeding, no evidence was presented to suggest she has ever had difficulty providing for herself or her child. Appellants have failed to show how Helen's immigration status would substantially impair D.R.T.'s physical health or emotional development.

### 5. *Negative Morality*

Appellants also argue that Chris and Helen's "negative morality" will cause substantial impairment to D.R.T. Appellants mainly point to Chris and Helen's participation in internet pornography as evidence of their "negative morality."

While they were married, Chris and Helen produced pornographic videos and photos and uploaded them to the internet for public viewing. Although Chris made no more internet pornography after he separated from Helen, Helen continued to produce and distribute pornographic photos and videos after the relationship ended. During the divorce proceedings, Helen testified that she did not intend to continue making internet pornography and that she was attempting to remove all pornographic images of herself from the internet.

To support their argument that Chris and Helen's involvement with internet pornography will substantially impair D.R.T., Appellants offered no proof of harm to the child, other than the pornographic images themselves. Appellants contend that D.R.T. will be negatively affected by the future discovery of the pornography made by her parents. This argument is flawed for two reasons. First, a parent will not be denied child custody based on evidence that merely raises a surmise or speculation of possible harm, and Appellants' claim is based on a purely hypothetical situation. *See Whitworth*, 222 S.W.3d at 623. Second, the fact that D.R.T. may one day come across internet pornography produced by her parents bears no relationship to the determination of whether the child would be

8

substantially impaired by being placed in the custody of either or both of her parents.

In addition, there was no evidence that D.R.T. was involved in or exposed to any internet pornography, and no one testified that Chris and Helen's care of D.R.T. was negatively affected by their participation in internet pornography. Appellants have failed to show how D.R.T. would be substantially impaired by either parent's past or present participation in internet pornography.

We hold that Appellants have failed to sufficiently establish that D.R.T. would be substantially impaired by being placed in the custody of either or both of her parents; therefore, the trial court did not abuse its discretion in determining that Appellants lacked standing. Appellants' first through third issues are overruled. Appellants' tenth through fifteenth issues are also overruled. Furthermore, because we find that Appellants did not have standing to intervene in the divorce proceeding, we do not reach their fourth through sixth issues that challenge the trial court's determination that appointment of D.R.T.'s parents as joint managing conservators was in the best interest of the child. *See* TEX. R. APP. P. 47.1.

### *B. Leave to Intervene*

In their ninth issue, Appellants challenge the trial court's finding that they did not request leave to intervene in the divorce suit. Appellants argue that Texas law does not require leave from the trial court to intervene and that, even if it did, they requested leave of court through their properly filed intervention petition. However, the trial court did not find that Appellants lacked standing based on their failure to formally request leave of court to intervene. Furthermore, we held above, for reasons unrelated to Appellants' failure to obtain leave of court, that the trial court did not abuse its discretion when it concluded that Appellants lacked standing and refused to grant them leave to intervene in the divorce suit.

9

Therefore, Appellants' ninth issue is not dispositive of the appeal and need not be addressed. *See id.*

### C. Motion for Continuance

Finally, we address Appellants' contention that the trial court abused its discretion when it denied their motion for continuance. Although Appellants stated in their motion for continuance that they needed more time to depose Chris and Helen, Appellants now claim that their motion should have been granted based on their need for more time to gather information from a former romantic partner of Chris named Shannise Walker.

The granting or denial of a motion for continuance is within the trial court's sound discretion, and we review the trial court's denial of such a motion under an abuse of discretion standard. *Hernandez v. Heldenfels*, 374 S.W.2d 196, 202 (Tex. 1963). In making our decision, we consider (1) the length of time the case has been on file, (2) the due diligence exercised to obtain the discovery sought, and (3) the materiality of that discovery. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004).

Here, Chris initiated divorce proceedings in August 2010, and Appellants filed their intervening petition the following month. Appellants waited to send discovery requests until March 28, 2011, seven months after the case was filed. The record reflects that Appellants were given a reasonable time in which to complete discovery and that nothing prevented them from conducting discovery earlier in the case.

As to the materiality of the discovery sought, Appellants' original motion and their argument on appeal differ as to what specific information they hoped to obtain through their motion for continuance. Appellants had to show the materiality of the discovery sought when they filed their motion, and they may not now alter their original motion to argue the materiality of alternative discovery.

10

*See Landers v. State Farm Lloyds*, 257 S.W.3d 740, 747 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Although Appellants stated in their motion for continuance that they needed more time to depose Chris and Helen, they did not explain how those further depositions would have affected the outcome of this case.

Appellants did not timely conduct discovery, did not exercise due diligence in seeking to obtain the desired discovery, and they also failed to show the materiality of the discovery sought. For these reasons, we conclude that the trial court did not abuse its discretion when it denied Appellants' motion for continuance. Appellants' seventh and eighth issues are overruled.

## V. *This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON

JUSTICE


February 28, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.